BEAUMONT, S. L. & W. RY. CO. v. MOY.
(No. 6755.)

(Court of Civil Appeals of Texas. Galveston. Feb. 9, 1915. Rehearing Denied March 11, 1915.)

1. RAILROADS ⟜348—ACCIDENTS AT CROSSING—SUFFICIENCY OF EVIDENCE—CONTRIBUTORY NEGLIGENCE.
　　In an action for the death of plaintiff's son, evidence *held* to show as a matter of law that the son was contributorily negligent in driving an automobile upon defendant's track in front of a train of cars that was switching, when he could have seen the cars approaching in time to have stopped if he had been looking.
　　[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1138–1150; Dec. Dig. ⟜348.]

2. RAILROADS ⟜350—CROSSING ACCIDENT—QUESTIONS FOR JURY — EVIDENCE — SUFFICIENCY.
　　Where witnesses for the defendant had testified that at the time of the accident there were no cars on the main track which would prevent a driver on the highway from seeing a train on the side track, testimony by a witness for plaintiff that he reached the scene some time after the accident, when the inquest had been held and the body removed, and that there were at that time cars on the main track which obstructed the view, is too remote to make an issue for the jury whether the cars were there at the time of the accident.
　　[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1152–1192; Dec. Dig. ⟜350.]

Appeal from Special District Court, Hardin County; J. Llewlyn, Judge.

Action by M. F. Moy against the Beaumont, Sour Lake & Western Railway Company. Judgment for the plaintiff, and defendant appeals. Reversed, and judgment rendered for defendant.

Andrews, Streetman, Burns & Logue and W. L. Cook, all of Houston, for appellant. Smith, Crawford & Sonfield, of Beaumont, for appellee.

McMEANS, J. M. F. Moy brought this suit against the defendant Beaumont, Sour Lake & Western Railway Company to recover damages growing out of the death of his son, Alfred Moy, alleged to have been caused by the negligence of defendant. Plaintiff alleged that his said minor son met his death while attempting to drive an automobile across defendant's track at a public road crossing near the station of Grayburg; that on said occasion one of defendant's cars was negligently, suddenly, and without warning propelled on and across said road, striking the automobile in which his said son was riding with great force, thereby completely destroying the automobile and instantly killing his son. The grounds of negligence upon which a recovery was predicated, as charged in the petition and submitted by the court to the jury, were: (1) The operation of the train of cars, which came in contact with the automobile, backward, without having a switchman at the crossing, and without a brakeman or other servant on the rear of said cars to warn the public of the danger in approaching the crossing; (2) in failing to ring the bell or blow the whistle when said train of cars was started and being moved upon said crossing; and (3) in suddenly and without warning to deceased starting the cars across the public road at a point so near the road that the deceased could not have stopped his automobile soon enough to have avoided collision without knowing beforehand that said cars were going to move. The defendant answered by general denial and by pleas of assumed risk and contributory negligence. The case was tried before a jury and resulted in a verdict and judgment for plaintiff for $4,000, and defendant appeals.

⟜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appellant's first assignment is predicated upon the refusal of the court to give to the jury its first special charge containing a peremptory instruction to return a verdict for defendant. Under this assignment it is urged in the second and third propositions: (a) That deceased was guilty of contributory negligence proximately causing his own death, in that, fully realizing the conditions, or being in such position that he must necessarily have realized the same, he negligently failed to keep a proper lookout for the movement of cars over the crossing in question; and (b) in failing to determine whether or not cars were approaching before entering upon the crossing after having brought the automobile which he was driving practically to a stop, such being negligence in view of the deceased's knowledge of the condition of the crossing and the other physical surroundings.

[1] The undisputed facts proved at the trial, as disclosed by the record and in the briefs of the parties, are as follows: Plaintiff's son, Alfred Moy, was 16 years of age, and in the employment of T. S. Crosbie of Sour Lake, as driver of a public automobile, and was a careful and competent driver. Grayburg is a town on the line of appellant's railroad situated about 1½ miles south of Sour Lake. Early in the afternoon of March 15, 1913, young Moy was sent by his employer in an automobile from Sour Lake to Grayburg. On his way he stopped and took two girls, Ellen Cowart and Bonnie Bell Parr, into his automobile, the girls occupying the rear seat. After this he drove the car at a rapid rate of speed until he reached a point in the edge of Grayburg opposite the King's hotel, which is situated about one block north and one block east from defendant's railroad where it crossed the public road upon which young Moy was traveling. Here he reduced his speed, and from that point slowly proceeded to the crossing. After taking the two girls into the car, he did not speak to them until he reduced speed, at which time he looked back and asked, "How do you like that?" and after that he did not look around again, but proceeded to the crossing at a slow rate of speed; and, just as the front wheels of the automobile were on the railroad track, a car attached to a train of cars which was being moved from an easterly direction struck the automobile, demolishing it, throwing the two girls out upon the ground, and instantly killing Alfred Moy. The crossing at the railroad was rough, the track at this place recently having been raised, and new shell having been thrown upon it, and the ends of the cross-ties were exposed, and there was a sharp ascent to reach the level of the track. Young Moy went upon the track slowly, but had not stopped at the time his automobile was struck, and there is no evidence to justify the conclusion that the engine of the automobile was "killed" after it got upon the track. He was well acquainted with the then crossing and had frequently passed over it in an automobile. Neither of the girls riding with Moy looked to see whether cars were approaching, and only one of them saw the car that struck them before the collision occurred, and then it was almost at the instant of the collision, and she only had time to exclaim, "There is a car!" when the collision occurred. Neither of them heard any whistle or the ringing of the engine bell before the collision.

Appellant's railroad track at Grayburg runs in an easterly and westerly direction, and is crossed by the public road at right angles. The depot at this place is situated about 200 yards east of the crossing, and on the south side of the main line track. In addition to the main line, there were two side tracks, one called the "passing track" running north of and parallel to the main line, and the other called the "house track" leading from the main line from a switch just west of the road crossing and passing on the south side of the depot and connecting with the main line some distance east of the depot. The passing track branched from the main line at about the distance of a block west of the depot, and re-entered the main line several hundred yards east of this point. On the day in question a freight train on appellant's road was being run from the direction of Beaumont in a westerly direction, toward Houston. There were 10 flat cars and a box car in this train that had to be set out at Budconnor, a station west of Grayburg. When the train reached Grayburg, it stopped to do the switching necessary to place those cars ahead of the engine so they might be shoved upon and left on a side track at Budconnor. To accomplish this purpose the entire train was stopped on the passing track. The 11 cars, which were next to the engine, were uncoupled from the rest of the train and were then pulled out on the main line through the western end of the passing track switch. They were then backed in on the house track from the west, where they were coupled to two cars that were standing on the house track, and these two cars were placed on the passing track on which the train had been left, to be incorporated in the train. The 11 cars were then again shoved in on the house track from the west and left there. The engine then went out onto the main line and headed in to the house track from the east and coupled onto the 11 cars. These cars were pushed westwardly to and over the public road crossing, and it was in making this movement the collision occurred resulting in Alfred Moy's death. Before making this last movement a brakeman on the train went to the switch at the western end of the house track, which was only a few feet west of the crossing, threw the switch, and gave the engineer the signal to "come ahead," which was obeyed. This brakeman did not testify at the trial, and

in explanation of this it was shown that he was dead. The two girls with young Moy did not see him.

At the time the signal was given by the brakeman and the movement started which resulted in the collision, the box car which was at the extreme western end of the 11 cars, and nearest to the crossing, was about 80 feet from the crossing, and in proceeding in that direction the cars moved slowly. There was no obstruction to obscure Moy's vision and prevent his seeing the moving cars after he reached a distance of 75 or 100 feet from the crossing had he looked. There was a house on the eastern side of the public road about this distance from the crossing; and between it and the crossing was a small structure described by some of the witnesses as being about the size of a piano box, and by others as being not larger than 8 feet high, 6 feet long, and 4 feet wide, and was then being used as a "short order" restaurant, or "hamburger stand," and was situated at a distance variously estimated at from 30 to 114 feet from the crossing. This structure but little, if at all, obscured the vision of any one approaching the crossing from the north as Moy did; and after it was passed there was nothing whatever to obscure the vision. The automobile traveling at the speed at which it was going when it went onto the track could have been stopped in the distance of its length or at the outside within 30 feet. In approaching the crossing the cars and the automobile were traveling at about the same rate of speed.

Our conclusions, based upon the foregoing facts, are that, had Alfred Moy used ordinary care in approaching and attempting to cross the railway track, he would have discovered the approach of the cars in ample time to have avoided the collision and his consequent death, and that therefore, having failed to use that degree of care which the law imposes upon every person about to cross a railroad, he was guilty of such contributory negligence as would have prevented a recovery in his behalf had he been injured only, and therefore to preclude a recovery in favor of his father for his death. It may be that the appellant was guilty of negligence in the circumstances of this case in failing through the brakeman who threw the switch to warn Moy of the approach of the cars, or by reason of failure to station some employé on the box car to give warning to persons about to use the crossing; but, be that as it may, the law is well settled, as said by Judge Williams in Railway v. Edwards, 100 Tex. 23, 93 S. W. 106, that:

"A traveler approaching a railroad crossing must exercise ordinary prudence in going upon the track to see that he may do so with safety. He cannot excuse the absence of all care by showing that those in charge of a train have also been guilty of negligence."

Alfred Moy was a careful driver and knew where the crossing was and the condition in which it was. It is clearly evident from the testimony that he was attempting to cross the track slowly in order to prevent heavy jarring of his car or discomfort to his passengers, and that while knowing the crossing was there no thought entered his mind to look for danger from cars that might be approaching. Had he looked, he could have seen the cars in time to have stopped. The view was clear for a sufficient distance from the track to have enabled him to see the approaching cars had he exercised the least care in that regard, and, having thus heedlessly exposed himself to a danger from which he might have saved himself by the use of proper care, he contributed directly to his own death and no action lies for damages therefor. Railway v. Edwards, supra; Railway v. Bracken, 59 Tex. 73; Railway v. Dean, 76 Tex. 73, 13 S. W. 45.

[2] Appellee contends there was sufficient evidence adduced to take the question of Alfred Moy's contributory negligence to the jury, in that the evidence shows, as he contends, that Moy's view of the approaching cars was obstructed by cars standing on the main line within a few feet of the crossing, and between Moy and the track on which the train was running; and, further, that the evidence warranted the conclusion that the engineer, after getting the "come ahead" signal from the brakeman, pushed the train down toward the crossing, and then stopped when the lead car was within a few feet of the crossing, and then without warning to Moy started the train over the crossing at a time when it was too late for Moy to stop and before he could get across. To prove the first of these contentions, he relies upon the testimony of one A. E. Boyd, who lived at Sour Lake, who testified in effect that he went to Grayburg after he heard of the accident; that when he reached there they had taken Moy's body up, and he met them about 150 yards from the track going to Sour Lake in a wagon; that this was after the inquest was held; that at that time the train that struck Moy was switching a string of cars, the same string that killed Moy; that it was coming off the track that goes below the depot on the south side of the main track; that they were going west and had a string of flat cars ahead; that, besides that train on the south switch, he saw some cars standing on the main line, and the closest of these to the public road was about 15 or 20 feet from the center of the road; that the closest car was just far enough away from the switch to clear it; that the switch is not more than 10 feet west of the public road.

"If one were coming down the shell road going to Grayburg, and a train of cars were moving on the switch line south of the depot, and joining the main track at the crossing, you would have to be right on the railroad before you could see those moving cars beyond the standing train on the main line; you could not see it at any distance; you could not see

it but at a short distance. The south track is lower than the main line track, and that would naturally hide a train or engine or anything else. If it was on a level, you could see the top of the engine, notice it quickly. No, sir; the train of cars standing on the main line would prevent you seeing a moving train on the switch at all."

The testimony of this witness fails to sustain appellee's contention for two reasons: First, there was no testimony that the cars which he says were standing on the main line, when he reached Grayburg, after the inquest had been held and the body picked up and carried 150 yards in a wagon from the place of the accident, were there at the time young Moy went upon the crossing, and his testimony is too remote to bring in issue the testimony of all other witnesses who swore that no cars were so situated on the main track. Again, the witness says that the cars on the main line were setting just far enough from the switch to clear the south switch, which the other witnesses called the "house track." It was proved without contradiction that a car standing on the main track at a point just close enough to the switch to clear a car coming out of the house track would have to be 150 feet from the switch and nearly this distance from the crossing as the crossing is practically at the switch. If it be conceded then that at the time of the accident there were cars standing on the main line, and, as stated by the witness Boyd, were just far enough away from the crossing to clear the south switch, then, according to the undisputed testimony, they must have been far enough away from the crossing as to not obstruct the view of Moy to such an extent as to have prevented him seeing the moving cars in ample time to have stopped had he looked. This was demonstrated by actual measurement of the distances, and by a map introduced in evidence, as to all of which there was no dispute.

To support his other contention, viz., that the engineer moved the string of cars to within a few feet of the crossing and then stopped and then suddenly started and ran over the crossing, appellee relies upon the testimony of the engineer himself, wherein he says, "The train was stopped at the time the negro (brakeman) gave the signal." From a reading of the testimony of this witness, it is clear that his testimony is not susceptible of the construction which appellee seeks to place upon it. The statement quoted was elicited on cross-examination. As set out in appellee's brief, the testimony of this witness, in so far as it bears on the question, is as follows:

"Yes, sir; I blew the whistle at the time we started, and it was not very long from the time it started until the accident happened. I blew the whistle as soon as I got the signal to go ahead, and that was when the train started. The train was stopped at the time the negro (brakeman) gave the signal. The negro and the conductor gave the signal about the same time. I saw the conductor signal. I started the train

and blew the whistle and rang the bell when I got the signal from the conductor, and he was then standing in front of the depot. * * * The brakeman was on the left-hand side of the track, and I saw him by looking right down over the cars. After the accident happened, when I shoved on around the depot, I saw the wheels of the automobile turned up, and that was the first I knew of the accident."

All the other witnesses who testified on this subject stated that the train in making this last movement did not stop from the time it first started toward the crossing until after the accident and did not then stop until it had proceeded further the distance of about three car lengths. It is manifest from his testimony that what the witness meant when he said the train was stopped at the time the brakeman gave the signal was that the train was standing at such time, and that it then without stopping again proceeded over the crossing. ·

Because the undisputed evidence shows that the death of Alfred Moy was caused by his own contributory negligence, the appellee· was not entitled to a recovery of damages therefor. This conclusion obviates the necessity of a discussion of the facts bearing upon the negligence of defendant.at the time and place of the accident further than to say that the facts are sufficient, we think, to warrant a finding of such negligence. We are also of the opinion that the evidence warrants a finding that appellee was damaged by the death of his son in the amount found by the jury.

We think the judgment of the court below should be reversed, and judgment here rendered for the appellant, and it has so been ordered.

Reversed and rendered.