NEW YORK CENT. & H. R. R. CO. et al. v. MAIDMENT.

(Circuit Court of Appeals, Third Circuit. March 12, 1909.)

No. 35.

1. RAILROADS (§ 327*)—ACCIDENTS AT CROSSINGS—CARE REQUIRED OF AUTOMOBILE DRIVER—DUTY TO STOP, LOOK, AND LISTEN.

Because of the fact that a collision between a railroad train and an automobile endangers, not only those in the automobile, but also those on board the train, and also because the car is more readily controlled than a horse vehicle, and can be left by the driver, if necessary, the law exacts from him a strict performance of the duty to stop, look, and listen before

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

driving upon a railroad crossing, where the view is obstructed. and to do so at a time and place where stopping and looking and listening will be effective.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 327.*]

2. RAILROADS (§ 328*)—ACCIDENTS AT CROSSING—CONTRIBUTORY NEGLIGENCE.

An automobile driven by plaintiff, in which he was riding with a friend, was struck by a train at a railroad crossing, and he was injured. There were double tracks, and plaintiff stopped 20 feet from the nearest track to allow a train on such track to pass, and then started ahead and was struck by a train on the other track going in the opposite direction. From the place where he stopped the tracks could be seen for a considerable distance in the direction from which the first train came; but, owing to trees and other obstructions, he could not see more than 175 feet in the other direction. If he had stopped on the first track, he could have seen the approaching train when 700 feet away; but he did not stop. *Held*, that he took chances rather than precaution, and was chargeable with contributory negligence, which precluded a recovery for his injury from the railroad company.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 328.*]

In Error to the Circuit Court of the United States for the District of New Jersey.

James B. Vredenburgh and Albert C. Wall, for plaintiffs in error. John S. Mackay, for defendant in error.

Before DALLAS, GRAY, and BUFFINGTON, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below, Maidment, hereafter styled plaintiff, sued the railroads, hereafter styled defendants, for damages sustained by him in a collision between an automobile, driven by him, and defendants' passenger train. The plaintiff recovered a verdict, and to review the judgment entered thereon defendants sued out this writ. A number of errors are alleged, but in our view the case turns on the refusal to give binding instructions for the defendants. If the plaintiff was guilty of contributory negligence, the point was well taken. To that question we therefore address ourselves.

At 7:21 on the evening of August 17, 1906, plaintiff drove his steam automobile westwardly on the Ft. Lee road to a point where the highway crossed at right angles the double-track main line of the defendants. A friend, Herrick by name, occupied the seat beside him. He states in his declaration it—

"was an extraordinarily dangerous crossing, for the public using the highway known as the Ft. Lee road, in that the approach of locomotives and cars of the defendants is obscured by a bridge, woods, trees, foliage, buildings, poles, and other obstructions, and the tracks of the defendants, at the time aforesaid, were constructed in a curved line, preventing a clear view of the defendants' locomotives and cars. moving in either direction towards the crossing aforesaid, which bridges, woods, trees. foliage, buildings, poles, and curved track obscured the view of persons crossing or attempting to cross the tracks of the defendants at the place aforesaid, in the borough aforesaid, on the 17th day of August, 1906."

He was familiar with the place, from crossing it that morning and several times before. A watchman was located there, but had left

before plaintiff approached. At a point 15 or 20 feet back from the east-bound track, plaintiff stopped his machine to await the passage of a long freight train on the nearest, or east-bound, track. He waited until the freight was 180 feet beyond the crossing. when he started his automobile down the sharp decline to the east-bound track and attempted to dart across the double tracks. At that instant a passenger train coming westward on the other, or west-bound, track, struck and wrecked his automobile and seriously injured the plaintiff. Was he guilty of contributory negligence in making the crossing?

With the coming into use of the automobile, new questions as to reciprocal rights and duties of the public and that vehicle have and will continue to arise. At no place are those relations more important than at the grade crossings of railroads. The main consideration hitherto with reference to such crossings has been the danger to those crossing. A ponderous, swiftly moving locomotive, followed by a heavy train, is subjected to slight danger by a crossing foot passenger, or a span of horses and a vehicle; but, when the passing vehicle is a ponderous steel structure, it threatens, not only the safety of its own occupants, but also those on the colliding train. And when to the perfect control of such a machine is added the factor of high speed, the temptation to dash over a track at terrific speed makes the automobile, unless carefully controlled, a new and grave element of crossing danger. On the other hand, when properly controlled, this powerful machine possesses capabilities contributing to safety. When a driver of horses attempts to make a crossing and is suddenly confronted by a train, difficulties face him to which the automobile is not subject. He cannot drive close to the track, or stop there, without risk of his horse frightening, shying, or overturning his vehicle. He cannot well leave his horse standing, and if he goes forward to the track to get an unobstructed view and look for coming trains he might have to lead his horse or team with him. These precautions the automobile driver can take, carefully and deliberately, and without the nervousness communicated by a frightened horse. It will thus be seen an automobile driver has the opportunity, if the situation is one of uncertainty, to settle that uncertainty on the side of safety, with less inconvenience, no danger, and more surely than the driver of a horse. Such being the case, the law, both from the standpoint of his own safety and the menace his machine is to the safety of others. should. in meeting these new conditions, rigidly hold the automobile driver to such reasonable care and precaution as go to his own safety and that of the traveling public. If the law demands such care, and those crossing make such care, and not chance, their protection. the possibilities of automobile crossing accidents will be minimized. In the case of trolleys crossing railroads at grade, the practice is general for the conductor to go ahead and from the track signal the halted car to advance. This would, of course, be impracticable as a rule for automobiles; but it illustrates the trend of the law, as the size of crossing vehicles makes collision with them more serious, to enforce greater safety precautions.

Now, in the present case, we are clear the plaintiff, in crossing with his automobile, unfortunately wholly omitted to take those reasonable

precautions which the situation both demanded and permitted. It is true he stopped 15 or 20 feet back from the tracks; but this was not to get a view of approaching trains. As will be seen later, he could not from that point get a sufficient outlook, and his stop there was merely to await the passage of the freight train. He says:

"I was between 15 and 20 feet, about 20 feet, and I couldn't go any further there, because farther on the roadway runs right down to a track on a steep grade like that (illustrating), quite a perceptible grade, and, of course, I did not want to take any chances of having the machine get away from my control and slip into the freight train. So that was the reason I stopped there."

From where he stopped it was impossible to see up the track, in the direction the west-bound trains would come from, further than 180 feet. Trees and bushes on the property adjoining defendants' right of way cut off all sight of the track beyond that short distance. He could see in the other direction a long way, and knew that no train was following the freight. Moreover, by stopping the automobile on the track which the freight had just passed over, he could see the east-bound track for upwards of 700 feet. Thus plaintiff's witness Herrick, who was in the machine, in answer to the question, "If you had looked northerly. after your machine had gotten on the easterly track, could you or could you not have seen the approaching passenger train on the westerly track?" answered, "Well, it seems as though we could see it; yes." It will thus be seen that when the plaintiff made his only stop he had no sufficient view of the track on which west-bound trains came, and that he made no stop on the east-bound track from which he could have seen a train coming on the west-bound one. This was negligence, a lack of precaution and reasonable care, which would have prevented the accident. As. it was, the plaintiff says that after the train flashed down upon him he brought his machine "to a complete stop and just to the point of reversing; if it would have been half a second later I would have avoided it." Indeed, the whole proof shows the plaintiff took chances, instead of precautions. We have seen he had no sufficient view when he first stopped. His view became worse as he went down the steep declivity to the track; for at that point Mr. Williams, an engineer and surveyor called by plaintiff, testified, "a pole and a sign pole and an automatic signal all came together," and cut off the vision to less than 175 feet.

But the plaintiff was not without means of crossing in safety. A second man was in the automobile. He could have gone ahead to the east-bound track, or Maidment could have safely halted the machine there. Instead of doing this, and without sight of the west-bound track, save for the very short distance a swift train would quickly cover, he took the chance of dashing across. He says:

"I took hold of the throttle to make this crossing as rapidly as I could to get out of the way quickly, and after I had started, and had gone I don't know how far, a train flashed down on me; and instantly I put my foot on the brake, throwing back my throttle at the same time, and making every effort to avoid any possible collision. * * * The machine had come to a complete stop, and just on the point of reversing. If it had been half a second later, I would have avoided it."

The duty of an automobile driver approaching tracks where there is restricted vision to stop, look, and listen, and to do so at a time and place where stopping and where looking and where listening will be effective, is a positive duty, and these safeguarding steps the plaintiff failed to take. He stopped where stopping served no purpose, and failed to stop where stopping would have disclosed danger. He made chance, and not sight, the guarantee of his safety.

We are clear he was guilty of contributory negligence, and the judgment below should be reversed.