GALVESTON–HOUSTON ELECTRIC RY. CO. v. PATELLA et al. (No. 468.)

(Court of Civil Appeals of Texas. Beaumont. May 30, 1920. Rehearing Denied June 9, 1920.)

1. Railroads ⟜350(22) — Automobile driver's contributory negligence held question for jury.

In an action for the death of an automobile driver at an interurban railroad crossing, evidence which showed that the driver neither looked nor listened for an approaching car, but that his view was somewhat obstructed in the direction from which the car came, held not to establish contributory negligence as a matter of law.

2. Railroads ⟜301 — Public and interurban company have equal rights at crossing.

An interurban railroad company has no right to the exclusive use of that part of the street upon which its track is laid, but all persons have an equal right to the use thereof for traveling over and across the street.

3. Trial ⟜252(9)—Correct abstract charge as to rights at crossing held misleading.

In an action for the death of an automobile driver at an interurban railroad crossing, where there was no contention that the driver did not have a right to be where he was and the evidence barely supported an inference of freedom from contributory negligence, it was misleading to give a correct charge that the driver had a right equal to the interurban company to use the street, from which the jury might have inferred it was not negligence for him to go upon the crossing as he did.

4. Railroads ⟜338 — Failure of autoist to show motorman he heard whistle does not indicate peril.

The failure of occupants of an automobile to indicate to the motorman of an approaching interurban car that they heard his warning whistle does not show that he knew they were in peril, so that he should have stopped or checked his car, where the speed of the automobile was such that he inferred it would stop before going on the crossing.

5. Railroads ⟜350(7)—Submission of issue as to sufficiency of whistle of interurban car held not warranted by evidence.

Where the evidence was undisputed that an interurban car had a whistle that could be heard for more than a mile, and which was heard by others when the car was 600 yards from the crossing where the accident occurred, there was no evidence to warrant submitting the issue of negligence in failing to equip the car with a sufficient whistle, though there was testimony that the whistle was less efficient than a locomotive whistle.

6. Railroads ⟜350(12)—Submission of special issue as to control of interurban car on approaching crossing held proper.

In an action for the death of an automobile driver at an interurban railroad crossing, the submission of a special issue raised by the

---

⟜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

pleadings and evidence whether it was negligence not to have the car under control after the motorman discovered the automobile approaching the crossing was not error, though there was no evidence to sustain an issue of discovered peril.

**7. Railroads** ☞348(1) — **Evidence held to show no special danger, requiring watchman or warning at crossing.**

In an action for the death of an automobile driver, evidence *held* not to show that the interurban crossing at which the accident occurred was one of special danger, though it was in a small incorporated town, and there was some obstruction to the view, so that it was error to admit evidence that there was no watchman or automatic crossing warning maintained there.

**8. Railroads** ☞351(22)—**Charge on discovered peril held incorrect.**

A requested charge that, before the jury could determine the issue of discovered peril in favor of plaintiffs, they must find the motorman actually discovered and realized the peril, and knew that plaintiffs' decedent would go on the crossing ahead of the approaching car and be injured, before any duty would arise to stop the interurban car or check its speed, was incorrect.

Appeal from District Court, Harris County; J. D. Harvey, Judge.

Action by Mrs. Annie Patella and others against the Galveston-Houston Electric Railway Company. Judgment for plaintiffs, and defendant appeals. Reversed and remanded.

C. R. Wharton and R. C. Patterson, both of Houston, for appellant.

W. J. Howard, Clarance Kendall, and Louis, Campbell & Nicholson, all of Houston, for appellees.

HIGHTOWER, C. J. This suit was filed by Mrs. Annie Patella in her own behalf and for the benefit of her minor daughter, Antoinette Patella, widow and daughter, respectively, of Phillip Patella, deceased, and by Bernardo Patella and wife, parents of said deceased. The object of the suit was to recover damages because of the death of Phillip Patella, alleged to have been negligently caused by the defendant. The plaintiffs alleged that on or about the 18th day of November, 1916, the defendant, Galveston-Houston Electric Railway Company, was the owner of and was engaged in operating an interurban railway line between the cities of Houston and Galveston in Harris county, which line passed through various towns, villages, and stations, one of which was Park Place, and that on said date the said Phillip Patella was driving an automobile along one of the main boulevards of the town of Park Place, and that when he undertook to cross the tracks of the defendant, where they intersected said boulevard or street upon which Patella was driving, his automobile was struck by one of the cars of defendant, and that in such collision Phillip Patella received injuries which resulted in his death. The grounds of negligence alleged were as follows:

(1) The defendant was negligent in failing to have at the said crossing an electric bell, gate, or other device to warn persons, traveling along said boulevard and across the defendant's tracks, of the approach of its cars.

(2) The defendant was negligent in operating its car, which struck the automobile and killed Phillip Patella, over said crossing at an excessive rate of speed, to wit: 45 or 50 miles an hour.

(3) The defendant was negligent in not having its car, which struck the automobile, equipped with a proper whistle or other warning device, that is, a whistle or device that would give reasonable notice or warning to the said Phillip Patella, or other persons having occasion to pass over said crossing, of the approach of said car.

(4) The defendant was negligent in failing to keep a watchman at the crossing, which was a much-used and dangerous crossing, in order to warn persons, who had occasion to pass over the track of defendant at that point, of the approach of its cars.

(5) The defendant was negligent in that it discovered Phillip Patella, at a considerable distance from the point at which the collision occurred, approaching the track of said defendant at a speed of 10 to 15 miles an hour, after he apparently did not hear the warnings given him by the defendant, and continued on his course, and at the same rate of speed approached said railroad track and the point of a collision under such conditions that made it appear that it was likely, possible, and probable that he would go upon said track, in front of the rapidly moving interurban car, and the defendant and its operatives in charge of the car saw Phillip Patella in such position and under such circumstances in time to have stopped the interurban car or lessened its speed and brought it under control so as to have avoided the collision and the killing of said Phillip Patella, but made no effort to stop the car or slow the speed thereof, when by exercising ordinary care the interurban could have been stopped and the collision avoided.

(6) That defendant was negligent, in that it discovered Phillip Patella in a position of peril or danger on, or near to, and approaching the track, in time to have stopped the car or lessened its speed and have avoided the collision; and it failed to stop the car in time to avoid such injury and death, although it could have done so with the means at hand, in the exercise of ordinary care.

(7) That if the defendant, its servants and agents, did not discover Phillip Patella in a position of danger at or near the track in time to have stopped the car before striking

him, it was negligent in not discovering him, in that it failed to exercise ordinary care to have so discovered him, and the defendant and its servants in charge of the car failed to keep a lookout for persons who might have occasion to cross the track of the defendant company at that point, the company well knowing that the crossing was a dangerous one, where the view of persons having occasion to pass over the track was cut off and obstructed by many objects; the crossing being a frequently and much-used crossing.

Damages were claimed by the plaintiffs in the sum of $40,000.

Defendant answered by a general demurrer and a special exception unnecessary to here mention, and by general denial and plea of contributory negligence upon the part of said Phillip Patella.

The trial resulted in a judgment in favor of the plaintiffs, and was apportioned as follows: $18,000 to Mrs. Annie Patella, $3,000 to the minor, Antoinette Patella, $1.00 to the father, Bernardo Patella, and $1.00 to the mother, Mrs. Bernardo Patella. From this judgment the defendant appealed, after its motion for new trial had been overruled.

The special issues which were submitted to the jury, and their answers thereto were as follows:

Issue No. 1: "Was or was not the defendant negligent in operating its car under the circumstances at the rate of speed it was operating same at the time it neared the crossing at which the collision with the automobile occurred? You will answer, 'It was,' or, 'It was not,' according as you find the fact to be." The jury answered: "It was."

Issue No. 2: "If you have answered special issue No. 1 in the affirmative, then you will answer, Was or was not such negligence a proximate cause of the injury? You will answer, 'It was,' or, 'It was not,' as you may find the fact to be." The jury answered: "It was."

Issue No. 3: "Was or was not the defendant negligent in not sounding the gong of said car as it approached the said crossing? You will answer, 'It was,' or 'It was not,' according as you find the fact to be." The jury answered: "It was."

Issue No. 4: "If you have answered the foregoing special issue No. 3 in the affirmative, then you will answer special issue No. 4. Was or was not such negligence a proximate cause of the collision? You will answer, 'It was,' or, 'It was not,' according as you find the fact to be." The jury answered: "It was."

Issue No. 5: "Was or was not the interurban car in question, under the circumstances, equipped with a whistle or other device that would have emitted or carried sufficient sound to properly warn people using such crossing? You will answer, 'It was,' or, 'It was not,' according as you find the fact to be." The jury answered: "It was not."

Issue No. 6: "If you have answered the foregoing special issue No. 5, then you will answer special issue No. 6. Was or was not such omission, if any, on the part of the defendant negligence, as that term has been hereinbe-fore defined? You will answer, 'It was,' or, 'It was not,' according as you find the fact to be." The jury answered: "It was."

Issue No. 7: "If you have answered the foregoing special issue No. 6 in the affirmative, then you will answer special issue No. 7. Was or was not such negligence, if any, the proximate cause of the collision in question? You will answer, 'It was,' or 'It was not,' according as you find the fact to be." The jury answered: "It was."

Issue No. 8: "Was or was not Phillip Patella guilty of contributory negligence, as that term has been hereinbefore defined, in approaching the crossing on the occasion in question in the manner he did? You will answer, 'He was,' or, 'He was not,' according as you find the fact to be." The jury answered: "He was not."

Issue No. 9: "If you have answered the foregoing special issue No. 8 in the affirmative, and only in such event, then you will answer special issue No. 9. Was or was not such contributory negligence, if any, the proximate cause of the collision in question? You will answer, 'It was,' or, 'It was not,' according as you find the fact to be." There was no answer to this question.

Issue No. 10: "Did or did not the motorman in charge of the defendant's interurban car actually discover Phillip Patella approaching the crossing under conditions that made it appear probable or likely that he would go onto the track ahead of the interurban car at a time when said interurban car was at a sufficient distance from said crossing to have enabled the motorman to have stopped same or lessened its speed, so as to avoid a collision by using the means at hand, consistent with the safety of its passengers? Answer, 'He did,' or, 'He did not,' according as you find the fact to be." The jury answered: "He did."

Issue No. 11: "Was or was not the defendant negligent under the circumstances in not having the interurban car under control after the motorman discovered the said Phillip Patella approaching the crossing? You will answer, 'It was,' or, 'It was not' according as you find the fact to be." The jury answered: "It was."

Issue No. 12: "If you have answered the foregoing special issue No. 11 in the affirmative, then you will answer special issue No. 12. Was or was not such negligence a proximate cause of the injury and death of the said Phillip Patella? The jury answered: "It was."

Issue No. 13 related to the measure of damages, which was determined as above shown.

From the foregoing findings, it is obvious that the jury found that appellant was guilty of negligence in every particular as alleged by the appellees, but acquitted Phillip Patella, deceased, of contributory negligence, as pleaded by appellant.

By its first assignment of error, appellant complains of the refusal of the trial court to peremptorily instruct the jury in its favor. This assignment is followed by several propositions showing the reasons of appellant for this contention. We shall not mention these

propositions in detail, but it will suffice to say that appellant's main contentions in this connection are that the evidence, as a whole, showed that Phillip Patella, deceased, was guilty of contributory negligence as a matter of law, which barred any recovery in favor of the appellees, and also that the issue of discovered peril, determined against it by the jury, was not in the case upon the evidence.

[1] We shall first dispose of the contention that contributory negligence on the part of the deceased was shown as a matter of law. At the time of his death, Phillip Patella resided in the city of Houston, and was an employé of the Gulf Refining ·Company in that city. In the afternoon of the 18th day of November, 1916, about 2 o'clock, Phillip Patella and three of his companions and co-employés, O. C. Herzog, S. G. Herring, and C. H. Wetzel, all young·men, left the city of Houston in an automobile owned by Phillip Patella's father, and went to Park Place, a little town south of the city of Houston, through which appellant's interurban railway track runs between that city and the city of Galveston. Deceased and his companions reached the town of Park Place about 3 o'clock, or a very few minutes thereafter, and upon reaching there, drove at once to the house of S. P. Mott, who was also an employé of the Gulf Refining Company in the city of Houston, but who lived with his family at Park Place. The purpose of these young men in going down to Park Place on said afternoon was to look at the town and drive around for pleasure generally. Being unacquainted with the town of Park Place they requested Mott, upon reaching his house, to get in the automobile with them and show them around the town, which Mott agreed to do, and got in the automobile with Patella and his companions, and they started out to see the town. After driving away from Mott's house, they in a few minutes reached what is known as Broadway boulevard, one of the principal streets of the town of Park Place, and which, as we gather from the record, runs practically north and south through the town. After driving into Broadway boulevard, the automobile, which· was driven by Patella, turned north and proceeded in the direction of the crossing, where the accident, which resulted in Patella's death, occurred. Herring was on the front seat with Patella, sitting to his left, and Herzog, Wetzel, and Mott were sitting in the rear seat of the automobile.

Appellant's interurban railway track, as best we can gather from the record, runs practically north and south through the town of Park Place, and at the time these young men left Mott's house for the purpose of driving over the town, appellant's interurban car, coming from Galveston, was, according to its schedule, due at the station at Park Place between five and eight minutes thereafter. These young men drove several blocks, perhaps some four or five blocks, after leaving Mott's house, before they drove into Broadway boulevard, but at the time they drove into Broadway, appellant's interurban car was not in sight of them, nor did they hear any signals of the approach of the car at that time, and they proceeded along Broadway north, in the direction of the crossing, where the accident occurred, the automobile traveling at a speed between 8 and 10 miles an hour. When the automobile reached a point on Broadway approximately 250 feet from the crossing where the accident occurred, appellant's interurban car had approached from Galveston, and was somewhere between, as best we can gather, 800 and 900 feet south of the crossing where the accident occurred, when the motorman on the interurban car discovered the automobile on Broadway, traveling in the direction of the crossing, and the motorman blew the whistle on the interurban for the crossing, and gave the usual crossing signals, but, according to the testimony of Mott, Herzog, Herring, and Wetzel, they did not hear the signal whistle, and did not hear any other signal or sound of the approaching interurban car, and did not see it, and were unaware of its approach to the crossing. About 250 feet from the crossing in question, that is, where appellant's track crosses Broadway boulevard, there was a small park, situated practically in the middle of Broadway boulevard, and for that reason the boulevard forks right at the south end of this little park, and one fork of the street turns to the left around the park, and the other fork to the right. On this occasion, when the park was reached, and upon seeing the forks in the street, Patella asked Mott which way they should go, and Mott directed him to take the left fork, leaving the little park on the right as they drove in the direc-. tion of the crossing. This direction was complied with, and Patella drove the automobile around the little park to the left, and continued in the direction of the crossing without change in the speed of the automobile, and during the time Patella was thus driving around the park the automobile was observed by appellant's motorman, and he, as we find the fact to be, was sounding the whistle on the interurban car to warn persons of the approach of the same to the crossing; but, according to the testimony of all the occupants of the car, other than Patella, they did not hear any of the signals, and did not know of the approach of the interurban car, and were not thinking about the interurban car, and did not look in the direction from which the interurban was coming. All of the occupants of the car who testified on the point stated that they were driving along at the rate of speed of between 8 and 10 miles an hour from the time the car came into Broadway boulevard until about the time the

crossing was reached, and that they did not change the speed of the automobile, and that they never thought of the approach of an interurban car, though some of them stated that they were aware that the car passed through the town of Park Place every hour.

One of the young men in the automobile testified that when the automobile was something like 50 feet from the crossing where the accident occurred, he did look in the direction of Houston, and saw no interurban approaching, and he thought that about at the same time Patella also looked in the same direction, but that none of them looked in the direction of Galveston, from which the interurban was approaching, until the automobile was within a few feet of the track at the crossing, and that when this witness, who was Herzog, did look in that direction he observed the interurban, which was then not over 30 feet distant from where Herzog was sitting in the rear seat of the automobile, and that he, upon seeing the interurban, said, "There is the interurban," and that he was the first man who discovered the interurban, and that within two seconds thereafter the collision occurred. This testimony on the part of Herzog is practically corroborated by Mott, Wetzel, and Herring. These same companions of Patella testified, however, that the view of the approach of the interurban car to the crossing, while the automobile was traveling up Broadway and around the little park, was to some extent obstructed by palms, which were growing in the park for ornamental purposes, and also they testified that as they approached near to the crossing, within 25 or 30 feet perhaps, the view of the approaching car was also obstructed by the trolley poles placed along the right of way, which were some 150 feet apart. There are photographs in the record before us which were used on the trial below, showing the location of the little park we have mentioned, and showing the palms growing therein, and also showing the trolley poles along the right of way, but the photographs do not show all palms that were growing in the park at the time the accident in question occurred, the undisputed evidence being that some of the palms that were growing at the time of the accident had been removed. The evidence further shows that the palms in the park averaged about 5 feet in height, though some of them were as high as 7½ feet, and the grade of appellant's track at that immediate vicinity was more than 4 feet higher than the street upon which the automobile was traveling. We are unable to tell from the photographs sent up with the record just what the extent of the obstructions to the view of an approaching car on the occasion in question was; that is, such obstructions as were caused by the palms and trolley poles, and from the whole evidence on that point we are not able to say that there was no obstruction to the view of an approaching car on the occasion in question, but must assume from the evidence that the view of the approaching car was to some extent obstructed, as claimed by the appellees. And while we conclude from the evidence in the record before us that deceased and his companions did not look or listen for appellant's interurban car, as it approached the crossing in question, and as the occupants of the automobile were approaching the crossing and before going on same, still, because of the fact that the view of an approaching car to the crossing was to some extent obstructed, and being unable to tell to what extent obstructed, we have concluded that we would not be authorized to hold that Phillip Patella was guilty of contributory negligence as a matter of law.

We shall not go into a lengthy discussion of the law as we understand it on this question, but feel bound by the expression of the Supreme Court of this state in the recent case of Trochta v. M., K. & T. Ry. Co., 218 S. W. 1038. The facts in that case will be found in the opinion of the Court of Civil Appeals at Austin, reported in 181 S. W. 761. The plaintiffs in that case, claiming damages in consequence of the death of Trochta, recovered judgment in the trial court against the railroad company because of Trochta's death, which was occasioned by a collision between the railroad company's train and Trochta's wagon at a public road crossing. The railroad company pleaded contributory negligence on the part of Trochta in approaching and going over the crossing as he did without looking or listening for the approach of a train to the crossing, and the jury, in response to a special issue submitted by the trial court, expressly found that Trochta neither looked nor listened for the approach of a train to the crossing, and also that he made no effort whatever to ascertain whether a train might be approaching the crossing before going upon the same, where he met his death; but the jury also found that his failure to look or listen, or to use any effort whatever to ascertain whether a train might be approaching the crossing, was not negligence on his part, and the trial court permitted such verdict to stand, but the Court of Civil Appeals said, substantially, that the jury was not authorized to infer that Trochta was not guilty of negligence which contributed to his death after expressly finding that he neither looked nor listened, nor made any other effort to ascertain whether a train might be approaching before he went upon the railroad crossing. A writ of error was granted in that case, and the Commission of Appeals, in an opinion by Justice Strong, declined to discuss or pass upon the action of the Court of Civil Appeals in holding as it did on the issue of contributory negligence, but disposed of the case upon the issue of discovered peril. Chief Justice Phil-

lips, in approving the disposition made by the commission, took occasion to say:

"Under the facts of this case there is in our opinion no warrant for not applying to it the general rule prevailing in this state, that the failure of one about to go over a public railway crossing to look and listen for an approaching train, does not, of itself, constitute negligence as a matter of law. Here, the question as to whether, under all the circumstances, Trochta 'was guilty of negligence in not looking or listening for the train, was for the jury. The jury determined it against the defendant.

"For this reason, as well as that announced in the opinion of the Commission of Appeals, the judgment of the Court of Civil Appeals is reversed and the judgment of the district court is affirmed."

It will be seen from the opinion of the Court of Civil Appeals in that case that there was some evidence to the effect that the view of an approaching train to the crossing where Trochta was killed was to some extent obscured by trees, some of which, as many as two small trees, were on the railroad company's right of way, and others on contiguous land.

We assume that Chief Justice Phillips had in mind, when he used the language just quoted, the fact that the evidence in the Trochta Case showed that the view of the railroad company's approaching train was to some extent obstructed, and that, therefore, the fact that Trochta neither looked nor listened nor made any other effort to ascertain whether he might go over the crossing with safety would not make him guilty of contributory negligence as a matter of law, and so, in this case, there being evidence regarding obstructions to the crossing, which we consider equally as strong as that shown in the Trochta Case, we could not consistently, in view of the expression of Judge Phillips, hold that Patella was guilty of contributory negligence as a matter of law, although we conclude as a fact, from all the evidence of his companions who testified on the trial, that neither he nor any of them looked or listened for an interurban car that might be approaching the crossing at the time Patella and his companions were approaching and attempting to make the same, nor did they use any other efforts to ascertain whether they might approach and make said crossing with safety to themselves. We think such conclusion cannot be escaped by any fair and reasonable mind. The writer, before the decision in the Trochta Case, had been of the opinion that all persons were required to use ordinary care for their own safety in going over railroad crossings, which every one knows are places of inherent danger, and that in the nature of things such care could only be used by the exercise of the senses of seeing and hearing, and that where it was admitted or proved beyond contradiction that a person neither looked nor listened for the approach of a train to a railroad crossing be-

fore attempting to make the same, and met his death in consequence of such failure, then no liability would attach because of such death.

In the case of Railway Co. v. Moy, 174 S. W. 697, it was held by the Galveston Court of Civil Appeals, upon facts similar to the facts of this case, as regards obstructions, etc., that the deceased, Moy, was guilty of contributory negligence as a matter of law, but the Supreme Court also reversed the Court of Civil Appeals in that case.

Also, in the case of Southern Traction Co. v. Kirksey, 181 S. W. 545, the Court of Civil Appeals for the Third District held that Kirksey was guilty of contributory negligence as a matter of law, and reversed and rendered a judgment of the trial court, which was in favor of the plaintiff. The Supreme Court granted a writ of error in that case, and reversed and rendered the judgment of the Court of Civil Appeals, and affirmed that of the district court, basing its action largely upon the fact that there were some obstructions to the view of an approaching car to the crossing where Kirksey was injured, but also laid some stress upon the fact that Kirksey's attention was diverted about the time he started over the crossing.

In view of the holding of the Supreme Court in the three cases mentioned, we have concluded, without discussing the matter further, that we would not be authorized to hold that Phillip Patella was guilty of contributory negligence as a matter of law, and therefore the assignment upon that point is overruled.

Passing for the present the second, third, and fourth assignments of error, we shall proceed to dispose of the fifth assignment. This assignment complains of paragraph 5 of the trial court's charge to the jury, which was as follows:

"You are further instructed that a street car company or interurban company has no right to the exclusive use of that part of the street upon which its track is laid, but all persons have an equal right to the use of same for traveling over and across the street."

By appropriate propositions under this assignment, appellant contends:

(1) That this charge was misleading, and calculated to cause the jury to give undue emphasis and prominence to the right of deceased to use the street and crossing in question, and that any charge upon the subject, in a case of this character, should instruct the jury that the railway company had, in a sense, the paramount right, to the extent, at least, that public necessity and convenience required that it take precedence at such crossings over the right of way of the ordinary traveler by vehicle or on foot; and

(2) That in a case of this character, where the deceased was not charged with being a trespasser, it was improper to give such

charge to the jury; that it could serve no good purpose, but was calculated to confuse and mislead the jury in determining the duties of the respective parties; and

(3) That even if the charge could be said to announce a correct proposition of law in the abstract, it was, nevertheless, error in this case, because it was calculated to confuse and mislead the jury in considering the vital questions involved under the issue of discovered peril; and

(4) That even if it could be held that the charge announced a correct proposition of law in the abstract, it was, nevertheless, error to give it to the jury in this case, because it was calculated to make the jury believe that the deceased had the right to be on the crossing at the time and under the circumstances in question, and that the charge was clearly calculated to nullify the defense of contributory negligence, because it was calculated to give the jury the understanding that the deceased had the right to be on the crossing at the time, and was therefore rightfully there at the very time and under the very circumstances in question, and that, being rightfully there, he was not guilty of negligence in being there.

Counsel for the appellees, by one of their counter propositions in this connection, reply to the contention of appellant by saying that the charge complained of announced a correct abstract principle of law, and that, as far as the charge went, it did not involve any affirmative error, and that if appellant desired to have the charge amplified or explained in any way touching its application to the facts in this case, appellant should have presented a special charge embracing such explanation. Appellees' counsel also seek to answer appellant's contention in this connection by other counter propositions, which we think are not tenable.

[2] As to whether the ·charge complained of announced a correct abstract principle of law, it is unnecessary for us to determine, but if we were called upon to do so, we would feel compelled to hold that it did so, following San Antonio Street Railway Co. v. Melcher, 87 Tex. 632, 30 S. W. 899, San Antonio Traction Co. v. Haines, 100 S. W. 791, and San Antonio Traction Co. v. Kumpf, 99 S. W. 864.

[3] There was no issue between the parties below as to their rights to the use of the crossing where the accident occurred, but the issues were whether appellant was guilty of negligence in any of the particulars charged by appellees, and whether Phillip Patella was guilty of contributory negligence, as charged by appellant, and, if so, then whether appellant discovered the perilous position in which Patella's negligence had placed him in time for appellant's motorman to have avoided injuring him by the use of such means as were then at the motorman's command, consistent with the safety of appellant's car and the persons thereon. Such being the only issues between the parties, we have searched this record in vain to find anything 'that might have suggested to the trial court the propriety of giving the charge complained of. If Phillip Patella was not guilty of negligence as a matter of law, and we have concluded he was not, yet it must be admitted, upon the practically undisputed evidence in this record bearing upon that issue, that the jury had a very narrow margin upon which to determine that Patella was not guilty of contributory negligence as a matter of fact, and such was the main defense relied upon by appellant in the trial before the jury. If the charge was correct as an abstract proposition of law, still it does not follow that the trial court may always properly give in charge to a jury some correct abstract principle of law, but, on the contrary, the reports of adjudicated cases in this state are replete with instances where such charges have been condemned on the ground that, being mere abstract propositions of law, they were confusing and misleading, and in some of the cases they were held to be reversible error.

In our judgment, it would be difficult to suppose any case where a charge along the lines of that complained of here would be calculated to be more prejudicial to the defendant than was this charge, upon the facts adduced upon the trial below.

Let us look at the probable effect of this charge upon the jury, composed of laymen, though supposed to be men of average intelligence and understanding, and see how they would probably construe the charge complained of. The defendant in this case was contending before the jury, in effect, that, even if it was guilty of negligence, as claimed by the plaintiffs, still the deceased, Phillip Patella, was also guilty of negligence at the very time and place when and where he met his death in approaching and going upon the crossing in question, without first using proper care to ascertain whether defendant's interurban car might be approaching such crossing, and that Phillip Patella did not use such care, and did not look or listen for the approach of appellant's car to such crossing, but, on the contrary, attempted to drive his automobile over said crossing when defendant's car was in plain view of Patella, and when he knew, or by the exercise of proper care ought to have known, that fact, and that under such circumstances Phillip Patella was not justified in so driving upon the crossing, and that his act in so doing barred any recovery by his family for his death. Presumably, this theory and position of the defendant below was strenuously argued by its counsel before the jury, which theory and position was, of course, denied by counsel in their argument for the plaintiffs. Now, when the

jury retired to consider of their verdict, bearing in mind the evidence admitted upon the defendant's plea of contributory negligence and the argument of counsel on that issue, when they reached that issue for determination, they were confronted by this charge and admonition coming from the trial judge:

"You are further instructed that a street car company, or interurban company, has no right to the exclusive use of that part of the street upon which its track is laid, but all persons have an equal right to the use of the same for traveling over and across the street."

With this charge before them, telling them in unmistakable language that Phillip Patella's right upon the crossing was equal to that of appellant's interurban car, was it not most natural for the jury to conclude that, Phillip Patella having the same legal right as the defendant to use the crossing as the defendant had, he could not be guilty of negligence which would have prevented a recovery by his wife and baby for his death, even if he did not look or listen for the approach of appellant's car to the crossing, and did not use any effort to ascertain whether an interurban car might be approaching the crossing at that time? Presumably, the jury tried to be guided, and were guided, by the court's charge as to the law applicable to the case before them, and when they were told by the charge complained of, in effect, that Phillip Patella had just as much right upon the crossing where he met his death as did the defendant, the jury very probably got the idea, and acted upon it, that Phillip Patella had the right to be upon that crossing at the very time he was struck and killed, regardless of the circumstances surrounding him at the time he went upon the crossing.

When it was said in some of the cases above mentioned that the rights of railroad companies and street car companies and the rights of the public to the use of crossings on public roads and streets are equal, it was certainly not meant that such companies and the public had the right to use and occupy such crossings at the same moment, because such a use would be unreasonable and impossible, and therefore the opinions in those cases did not intend to announce any such rule, but, on the contrary, meant to say only that the public had just as much right to pass over the railroad track at such public road and street crossings as did the railway or street car company to run its cars along that track over such roads or streets. But, to say to a jury in a case where contributory negligence on the part of one injured or killed at the crossing was interposed as a defense, that the injured or deceased person was as much within his rights in using the crossing as was the railway company was certainly calculated to mislead and confuse the jury, and cause them to treat very lightly, at least,

the defendant's plea of contributory negligence.

In the case of Baker v. Collins, 199 S. W. 519, the plaintiffs had recovered judgment below because of the alleged negligent killing of John F. Collins at a public road crossing over a railroad track, the said Collins at the time riding in an automobile which was struck by a train of the railroad company at the crossing. In that case the defendant, among other things, was relying upon the defense of contributory negligence on the part of Collins, and the trial court, at the plaintiff's request, gave to the jury this charge:

"Gentlemen of the jury, you are instructed that as a matter of law the deceased had an equal right to travel on the dirt road at the intersection with the railroad, as the railroad had to run its train on its track at that point."

The Austin Court of Civil Appeals, speaking through Chief Justice Key, in sustaining an assignment of error challenging the correctness of the trial court's action in giving the quoted charge, among other things said:

"We sustain appellant's contention that this charge was confusing and misleading, and therefore the court erred in giving it. The case involved a question of negligence from two standpoints: one, negligence on the part of the defendant in approaching the crossing without giving statutory signals, and the other on the part of Mr. Collins in driving his automobile upon the crossing while the train was near by and approaching. The court in its main charge gave all the law that was necessary upon both of those questions.

"In so far as the record shows, no one had charged that the deceased was a trespasser and had no right to travel the public road where it intersected and crossed the railroad track, and therefore it was unnecessary for the court to inform the jury of deceased's right in that respect. But the charge in question was not properly framed to give the jury correct and accurate knowledge upon that subject.

"As bearing upon the question of negligence charged against railroad companies in the operation of their trains, our Supreme Court has frequently said that railroads have no exclusive right to the use of their tracks where they cross public highways; that the public have the right to travel such highways, and in so doing to cross railroad tracks; and that the law imposes upon those operating railroad trains the duty of exercising due care to prevent injury to persons who may be so traveling. And in considering the question of negligence on the part of the railroad company, it is not improper to give such charge, if it is so framed as to limit it to that question.

"The charge now under consideration was not restricted to a consideration of the question of the defendant's negligence, and the jury had the right to consider it in determining the question of contributory negligence. And when so considered, and in view of the fact that it specifically declared that Mr. Collins had an equal right to travel on the dirt road at the inter-

section of the railroad as the railroad had to run its trains on its tracks at that point, the jury may have concluded that the charge meant that as Collins had such right, proof of the fact that he knowingly and willfully ran his automobile upon the track at a time when he must have known that it was very dangerous to do so would not defeat the plaintiffs' right to recover. * * * Of course, it is not true in either law or reason, that when a person is traveling a public highway which crosses a railroad track, such person and the railroad each have the right to pass the intersection at the same time. Under such circumstances, and in the very nature of things, one or the other must have the right of precedence, because they cannot both occupy the point of intersection at the same time.

"Such right of precedence is not fixed by statute in this state, but, generally speaking, common sense and public welfare dictate that it should be accorded to railroad trains; and it is a matter of common knowledge that, as a general rule, the traveling public recognize and accord such right of precedence to approaching trains. We do not state this as a rule of law to be given in charge to juries, though the writer, speaking for himself only, believes that it should be. * * * * "

Counsel for appellees in this case contend, among other things, that the charge condemned in Baker v. Collins was materially different from the charge here complained of by appellant, but we cannot agree with counsel for appellees that there is any material difference between the two charges as to their effect upon a jury in determining the issue of contributory negligence. After considering most carefully the evidence in this case bearing upon the issue of contributory negligence relied upon by appellant, we are unable to escape the conclusion that the charge complained of was highly calculated to cause the jury in this case to acquit Phillip Patella of contributory negligence, and that it very probably did cause the jury to so acquit him, and we, therefore, hold, after very much consideration of the question, that the giving of the charge complained of was error on the part of the trial court for which the judgment in this case should be reversed. See Stafford v. Chippewa, etc., Ry. Co., 110 Wis. 331, 85 N. W. 1036; Austin, etc., Ry. Co. v. Faust, 63 Tex. Civ. App. 91, 133 S. W. 451.

The charge complained of was not only calculated to cause the jury to render a verdict acquitting Phillip Patella of contributory negligence, but it was also highly calculated, we think, to cause the jury to find that appellant's motorman discovered Phillip Patella's perilous position in time to have prevented injuring him, and that after such discovery the motorman failed to do so, and for that reason also the charge should not have been given, even if the issue of discovered peril were in this case, as developed on the trial below. We have concluded, however, that the issue of discovered peril was not made by the evidence adduced upon the trial below, and shall now discuss that point.

Without stating the evidence of any of the witnesses separately, we shall state, substantially, what the material undisputed evidence was, as a whole, bearing upon the issue of discovered peril. Appellant's motorman, according to the undisputed testimony, saw Patella's automobile traveling north on Broadway boulevard at a distance, at least, as far as 250 feet from the crossing of that street by appellant's track where the accident occurred, and appellant's motorman could see, and did see, the automobile as it proceeded along the entire distance of 250 feet up Broadway in the direction of the crossing, and some of the testimony, especially that of Mrs. Ainsworth, was to the effect that while the automobile was traveling in the direction of the crossing, and after it had gotten within 250 feet thereof, the whistle on appellant's interurban car was sounded repeatedly and almost continuously up to the time the collision took place. Mrs. Ainsworth also testified that she saw no change in the speed of the automobile after she discovered it at the point of about 250 feet from the crossing until it practically reached the crossing, and that she did not see any of the occupants of the automobile look in the direction of the approaching interurban car. Practically the same character of testimony was given by Mrs. Langham. The automobile in which Patella and his companions were riding was a Hudson make, and the evidence shows that Hudson automobiles, in proper working order, as this car was at the time, when going at a speed of 8 or 10 miles an hour, could be stopped in 8 or 9 feet, and when going at a speed from 6 to 8 miles an hour could be stopped in 6 or 8 feet. The evidence also showed that the automobile was an open car, and there was nothing about the car itself to prevent the occupants from seeing the approach of appellant's interurban to the crossing had they looked in that direction. The evidence further shows that the occupants of the car were doing nothing out of the ordinary while driving along in the direction of the crossing, but were conversing and acting as persons usually do in driving along.

Appellant's motorman, Pennington, testified, substantially, that he first discovered the automobile traveling north on Broadway when it was about 250 feet from the crossing in question, and that in his opinion the automobile was traveling about 6 or 8 miles an hour, and that he kept his eyes on the automobile as the interurban approached the crossing, and that from the speed at which the automobile was traveling, he, the motorman, thought that the automobile was going to stop before going on the crossing, and that he never discovered anything from the actions of the occupants of the automobile that

indicated anything to the contrary, or that they were unaware of the approach of the interurban car, until the automobile was within 25 or 30 feet of the crossing, at which time one of the occupants of the automobile raised up and waved his hand at the interurban car, and that at that instant the interurban car was then within 150 feet or about that distance from the crossing, and that it was impossible to then stop the interurban car or so check its speed as to prevent the collision at the crossing. The undisputed testimony further showed that the interurban car was running at a speed between 40 and 50 miles an hour as it approached the crossing in question, and the motorman testified that in going at that rate of speed it would require a distance of between 400 and 600 feet to stop the car. There was one witness who testified for appellees, to the effect that an interurban car ought to be stopped, going at a rate of speed of 35 or 40 miles an hour, within 250 or 300 feet, but he also stated that he had never operated an interurban car, but was only basing his opinion upon his experience as a locomotive engineer, and that he thought that an interurban car such as appellant's in this case could be stopped about as soon as a light train, and that from his experience as an engineer of many years, a light train could be stopped, by proper application of the air brakes, when going at a rate of 35 or 40 miles an hour, within 250 or 300 feet. This, we say, is about the substance of the testimony of appellees' witness Middleton on this point.

The collision occurred in broad open daylight, at about 3:15 in the afternoon, and the interurban car, at the time of the collision, was running on its schedule time. The motorman further testified that he had often observed persons approaching the crossing in automobiles, and that as a usual thing such persons would bring their cars to a stop when the interurban was approaching the crossing, and permit the interurban to pass, and that on a number of occasions persons driving automobiles would drive up sometimes within 5 feet of the track and then stop the automobile and permit the interurban to pass, and that on that occasion he saw nothing in the conduct of the occupants of the car that indicated to him that they would try to go over the crossing in question ahead of the interurban, or that they were unaware of the approach of the interurban to the crossing at the time, until, as stated above, some one in the automobile, when the same was within 25 or 30 feet of the crossing, raised up and waved his hand in the direction of the approaching interurban.

The testimony in the record shows, we think, without reasonable dispute, that the whistle on the interurban was capable of being heard on an ordinary day for more than a mile, and, according to the testimony of Mrs. Ainsworth and Mrs. Langham, the whistle on the interurban on the day in question was distinctly heard by them when it blew at a distance of between 400 and 600 yards south of the crossing, back near the woods in the direction of Galveston, and before the interurban was in sight.

There can be no question, from the positive evidence in this case, that the motorman on the interurban could reasonably expect that the occupants of the car heard the alarm given by the whistle as the interurban was approaching the crossing, because the positive evidence in the case makes it too plain for argument that this whistle could be heard more than a mile away.

The evidence also shows that there was the usual crossing sign at the crossing where the accident occurred, containing the words, "Railroad Crossing," and that this sign was facing the occupants of the automobile as they approached the crossing.

Now, Patella's companions in the automobile each testified, as we have stated in the beginning, that they neither heard nor saw appellant's interurban car as it approached the crossing in question until it was discovered by Herzog, who was sitting on the rear seat of the automobile, at a time when the interurban was only 25 or 30 feet from him.

Now, from this evidence, substantially stated, it is the contention of counsel for appellees that the issue of discovered peril was in the case, and that the trial court properly submitted it for the consideration of the jury, and that the evidence is sufficient to warrant the finding of the jury that appellant's motorman actually discovered Phillip Patella's peril or danger as he approached the crossing in question in time to have prevented injuring him by the means then at the command of the motorman, and that he failed to use such means, and that, therefore, the judgment should be affirmed, regardless of Patella's contributory negligence, if there was such, and regardless of any error, if any, touching the issue of contributory negligence.

Of course, if the evidence were sufficient to show that appellant's motorman actually discovered that Phillip Patella was in imminent peril as he approached the crossing in question, and that such discovery was made by appellant's motorman at such time when he could, by the use of all means then at hand, consistent with the safety of appellant's car and the persons thereon, have prevented the collision which resulted in Patella's death, and failed to do so, then appellant was liable for the death of Phillip Patella, regardless of contributory negligence on his part.

[4] Counsel for appellees base their contention of discovered peril mainly upon the fact, as shown by the undisputed evidence, that none of the occupants of the automobile indicated to the motorman on the interurban that they heard the alarm whistle which was

being given as the car and the automobile were approaching the crossing. Certainly, the occupants of the automobile were in no imminent or actual peril while traveling along Broadway boulevard in the direction of the crossing, unless they were, in fact, unaware of the near approach of appellant's interurban car to that crossing, because certainly it must be presumed that they would not attempt to go upon the crossing and risk a collision with the approaching interurban if they were aware of its approach. Therefore the only thing that could have constituted peril or danger to the occupants of the automobile in approaching the crossing as they did was their ignorance of the approach of the interurban, and unless appellant's motorman was aware of or realized that the occupants of the automobile did not hear the whistle on the interurban and were not aware of its approach to the crossing, and that they would not probably stop or look or listen before going over the crossing, he did not actually know that the occupants of the automobile were in any danger or 'peril. Now, counsel for appellees contend that the fact that the occupants of the automobile failed to indicate to the motorman, by any action on their part, that they heard the alarm whistle was of itself sufficient to apprise the motorman and cause him to realize and know, and compel him to act upon such knowledge, that the occupants of the automobile had not heard the alarm whistle, and were ignorant and unaware of the approach of the interurban to the crossing. In this contention we cannot agree with the able counsel for appellees.

In support of their contention that the issue of discovered peril was in the case, counsel in their brief have cited several cases by the appellate courts of this state, among them H. & T. C. Ry. Co. v. Finn, 101 Tex. 511, 109 S. W. 918; Railway Co. v. Munn, 46 Tex. Civ. App. 276, 102 S. W. 442, and Galveston Electric Co. v. Antonini, 152 S. W. 845. It is the contention of counsel for appellees that these three cases specifically mentioned are practically parallel with the case at bar on the issue of discovered peril. In order to get at the facts in the Finn Case, reference must be had to the opinion of the Court of Civil Appeals in that case, reported in 107 S. W. 94, because the opinion of the Supreme Court in that case does not recite the facts, but merely refers to the opinion of the Court of Civil Appeals for the facts. All three of these cases, as well as all others cited by counsel for appellees, recognize the rule in this state to the effect that a recovery cannot be had against a railway or street car company upon the doctrine or principle of discovered peril in the absence of proof that such company's employés or servants actually discovered the perilous position of the person injured at such time that the opera-

222 S.W.—40

tives or servants of such company could have prevented the injury by the proper use of all means then at their command. T. & P. Ry. Co. v. Breadow, 90 Tex. 26, 36 S. W. 410; Morgan & Bros. v. M., K. & T. Ry. Co., 108 Tex. 331, 193 S. W. 134; Galveston Electric Co. v. Swank, 188 S. W. 705; San Antonio Traction Co. v. Kelleher, 48 Tex. Civ. App. 421, 107 S. W. 64; Schaff v. Gooch, 218 S. W. 783, and many other cases might be cited upon the point. But counsel for appellees do not deny the rule as we have stated it, but contend that the evidence in this case was sufficient to raise the issue of discovered peril, and to warrant the finding of the jury in appellees' favor on the issue, because they say that, when the occupants of the automobile failed to indicate, by some sign or otherwise, that they had heard the alarm whistles, which were so frequently repeated by appellant's motorman, the motorman then realized and actually knew that the occupants of the automobile were unaware of the interurban's approach, and that they would probably and likely go onto the crossing and collide with the interurban car.

If we should sustain counsel's contention in this connection, we would be virtually holding that any person, driving an automobile approaching a railroad or street car crossing, and near thereto, who fails to indicate to those in charge of an approaching railroad engine or street car, which is giving signals of its approach to the crossing, that such driver of the automobile heard such signals while approaching the crossing, was in actual peril or danger of collision at such crossing, and that if a collision at the crossing should follow, and it should be shown that the operatives of the railroad engine or street car failed to use all means then at command to prevent the collision, the injured party would be entitled to recover damages, regardless of any and all negligence on his part. We cannot subscribe to such a doctrine, because we think it would be most unreasonable, and would seriously hamper and interfere with the discharge of the duties owed by railroad and street car companies to the public. Such companies must operate their trains and cars in accordance with fixed and regular schedules, and in the very nature of things they cannot be required or expected to so run and operate their trains and cars as will permit private individuals to cross over their tracks in such manner and at such rate of speed as they may be pleased to go, and the engineer in charge of a railroad engine, or the motorman of an interurban street car, ought not to be held to have actual knowledge that the driver of an automobile approaching a public crossing was ignorant of an approaching train or car to the crossing merely because the driver of the automobile fails to respond in some way to warning signals given by the engineer

626 SOUTHWESTERN REPORTER (Tex.

or motorman. And especially should the motorman in this case not be held to have had actual knowledge of such ignorance on the part of Phillip Patella or those in the automobile with him, which ignorance alone must constitute any peril or danger that the occupants of the automobile were in, in approaching the crossing in question, because the automobile was going at a very slow rate of speed, which, according to Patella's companions who testified in the case, did not exceed 10 miles an hour, and the proof showed that the automobile going at that rate of speed could have been stopped within 8 to 10 feet, and during all the time that the automobile was approaching the crossing the proof is undisputed that the motorman on the interurban was blowing a whistle that the people in that vicinity could hear a mile or more, and there was nothing in the conduct of the occupants of the automobile, other than their failure to respond to the motorman's signals, that they were unaware of the approach of the interurban car. Pennington, appellant's motorman, in this connection, testified as follows:

"I saw the automobile as it came around the palm grove. The car (meaning the automobile) was driving slow. * * * The automobile was running 6 or 8 miles an hour as it was coming up the drive. It looked like it was going to stop at the speed it was going. * * * When I got close to the crossing one man stood up and waved his hand at me. They were 25 or 30 feet from the crossing when he did this. I was somewhere about 150 feet from them at that time, I reckon."

In the case of Austin Street Railway Co. v. Faust, 63 Tex. Civ. App. 91, 133 S. W. 449, the Court of Civil Appeals used this language:

"From the fact that people usually recognize and act upon this preferential right of the car [meaning street car], the motorman may well assume that it will be recognized and acted upon in a given instance, until there is something to reasonably indicate the contrary."

What was there in the conduct of the young men in the automobile with Phillip Patella to indicate that they intended to drive over the crossing ahead of the interurban car? In this connection see, also, Ft. Worth & Denver City Ry. Co. v. Shetter, 94 Tex. 199, 59 S. W. 533; Ft. Worth & Denver City Ry. Co. v. Harrison, 163 S. W. 332; New York Central & H. Ry. Co. v. Maidment, 168 Fed. 21, 93 C. C. A. 413, 21 L. R. A. (N. S.) 794.

Before concluding on this point, we will say that we have read carefully every authority cited by counsel for appellees in support of their contention that the issue of discovered peril was in this case, but, after doing so, we have concluded that neither of them is parallel in its facts to this case on the issue of discovered peril but on the contrary each of them is easily distinguishable in its facts from the present case; and we would be pleased to let this opinion show such distinction were it not for the fact that it would carry this opinion to too great length. This court is unanimously of the opinion that the issue of discovered peril was not in this case, and therefore appellant's assignment of error challenging the action of the court in submitting that issue, and the finding of the jury upon that issue, as being unsupported by the evidence, are sustained.

[5] Over objection of appellant the trial court submitted as an issue for the jury's determination this issue:

"Was or was not the interurban car in question, under the circumstances, equipped with a whistle or other device that would have emitted or carried sufficient sound to properly warn people using such crossing?"

The jury answered that appellant's car was not so equipped. The action of the court in submitting this issue is made the basis of the sixth assignment of error. The contention of appellant is that there was no evidence raising such issue and that therefore the court was unauthorized to submit it for the jury's determination. We sustain the assignment.

It is true that Patella's companions in the automobile at the time of the accident testified that none of them heard the whistle on appellant's car, but none of them testified positively that the whistle was not blown, nor did any of them undertake to state any fact from which the jury might have reasonably inferred that the whistle used on the car was insufficient to properly warn people using the crossing. On the other hand it was shown by the positive testimony of Mrs. Ainsworth and Mrs. Cunningham which was introduced by appellees that this whistle on appellant's car was capable of being heard, under ordinary conditions of weather for a mile or more and, as said by one of them, the whistle on this car was considered a clock, the car making its trips every hour, and thereby afforded to the witness a fairly accurate timepiece. Both of these witnesses, Mrs. Cunningham and Mrs. Ainsworth, lived several blocks from appellant's track in the town of Park Place, and on the very occasion in question, as the car was approaching the crossing from Galveston and while still some 500 or 600 yards south of where the accident occurred this whistle was distinctly heard. It may be true, as one of the appellees' witnesses said, that the whistle was not as strong as that of a steam whistle on a locomotive engine, and yet it would not follow from that fact that this whistle was insufficient in volume or sound to apprise persons using crossings over the interurban track of the approach of appellant's car. To require interurban cars to be equipped with

such powerful whistles and bells as are usually used upon locomotive engines on railroads would perhaps constitute a source of great annoyance on many occasions. For instance, an interurban car running through the popular streets of the city of Houston and city of Galveston with a whistle shrieking like that on an ordinary locomotive engine would hardly be expected, and perhaps not tolerated, by the people of the city, and we think that because this whistle on appellant's interurban did not have the volume or carry as far as that on a locomotive engine ought to be considered no evidence that appellant's whistle on this car was insufficient for the purpose of giving warning to persons at a crossing. Of course, we would not reverse the case because of the submission of that issue, since the whole case was submitted upon special issues, but upon another trial, if the evidence as to the sufficiency of the whistle should be the same, or practically so, the court should not submit that issue to the jury.

The seventh assignment points out no prejudicial error, and it is overruled.

The eighth assignment complains of the action of the court in submitting to the jury the issue of discovered peril, and from what we have said above it follows that the assignment must be sustained, because no such issue was in the case.

The ninth assignment complains of the form of the issue of discovered peril, as submitted to the jury. It is unnecessary to discuss that matter, because the issue of discovered peril could not have properly gone to the jury in any form.

[6] There was no error in the submission of issue No. 11, which is made the basis of appellant's tenth assignment. Appellant's counsel are mistaken in what seems to be the view that issue No. 11 involved the issue of discovered peril. Without discussing that matter, owing to the length of this opinion, we simply overrule the assignment, because the issue there submitted was properly pleaded, and there was evidence in support thereof.

The eleventh assignment of error, which relates to the same matter, is overruled for the same reason.

[7] The twelfth assignment of error complains of the action of the trial court in admitting evidence, over the objection of appellant, that there was not maintained at the crossing in question a watchman or some character of an automatic crossing warning or device at the crossing where the accident happened. It is contended by appellant in this connection that there was no evidence showing that the crossing where the accident occurred was extrahazardous or extradangerous, and that therefore no negligence could be predicated upon the failure of appellant to keep a watchman or other auto-matic device for warning persons at that crossing. It seems to be settled by the authorities that railroad companies and street car companies can only be held negligent for failure to keep a watchman or maintain other warning devices at crossings where the circumstances surrounding the same are such as to make such crossing extrahazardous or extradangerous. We see nothing in the evidence in this record from which it could be reasonably concluded that the crossing where the accident in question occurred was extrahazardous or extradangerous. It is true, as claimed by appellees, that the little town of Park Place was incorporated, but the proof also shows that there were only about 100 families in the town, and as we see the evidence in this record, there is practically nothing at or near the crossing in question that could be said to constitute any considerable obstruction to the view of approaching cars. M., K. & T. Ry. Co. v. Magee, 92 Tex. 620, 50 S. W. 1013. Upon another trial, the matters here complained of should be obviated.

The thirteenth assignment challenges the verdict as being excessive. It is unnecessary and perhaps would be improper to pass upon this assignment, since the case must be reversed for other reasons.

The fourteenth assignment complains of the conduct of the jury in the manner in which they arrived at their verdict. It is unnecessary to determine the matter, because it will not probably occur upon another trial.

By the fifteenth assignment it is contended that the judgment should be set aside because three of the jurors in the case were alien enemies, and were not citizens of the United States, etc., and that these facts were unknown to and could not have been known, etc., by appellant at the time they were taken upon the jury. This matter will probably not occur upon another trial, and it is unnecessary to pass upon it.

[8] We now return to the second, third, and fourth assignments of error, which relate to the refusal of the trial court to give to the jury three special charges requested by appellant, designed to guide the jury in determining the issue of discovered peril, which the court had submitted over appellant's objection. The substance of the three charges was practically the same. They told the jury, in effect, that before they could determine the issue of discovered peril in favor of the plaintiffs the jury must find from the evidence that appellant's motorman actually discovered Patella in a situation of peril and realized his peril, and that the motorman actually knew and realized that Patella would go on the crossing ahead of the approaching car and be injured, before any duty would arise on the part of the motorman to stop the interurban or check its speed. Such charge did not announce a cor-

rect principle of law relative to the doctrine of discovered peril. Had the evidence been sufficient to raise such issue, it would have been proper to have instructed the jury that if the motorman actually knew that Patella was in danger, that is to say, that the motorman actually knew that Patella was unaware of the approach of the motorcar to the crossing, and that the motorman realized, under all the circumstances then attending, that Patella would probably go upon the crossing and a collision take place, and that the motorman, after having such knowledge and so realizing, could have prevented the collision, by use of means then at hand, consistent with the safety of the interurban car and its passengers, and failed to do so, then the jury would find for the plaintiffs on the issue of discovered peril, but, unless they so found the facts to be, to find for defendant on that issue. Railway Co. v. O'Donnell, 99 Tex. 636, 92 S. W. 409; Railway Co. v. Munn, 46 Tex. Civ. App. 276, 102 S. W. 442; Railway Co. v. Finn, 101 Tex. 511, 109 S. W. 918; Galveston Electric Co. v. Antonini, 152 S. W. 845.

We have said this much relative to the refused charges because it may be that the evidence on another trial will be such as to authorize the submission of the issue. Nor would we be understood to mean that the issue of discovered peril may not be raised and sustained by circumstances when sufficiently strong.

Because we are thoroughly convinced that the fifth assignment already discussed points out error which was highly prejudicial to appellant the judgment will be reversed and the cause remanded; and it is so ordered.