THE G., H. & S. A. R'y Co. v. LAURA BRACKEN ET AL.

(Case No. 1576.)

1. NEGLIGENCE.— Every one about to step upon a railway track must listen and look before attempting to cross, in order to avoid an approaching train, and not walk carelessly into the place of possible danger.   A failure to do this is not merely an imperfect performance of duty, but an entire failure of performance, which will bar the right to recover damages if it contributed proximately to an injury inflicted by the train.   Due care must appear on the part of him who sustains the injury, and this whether it was caused by a train going forward or backward.

2. PRACTICE.— The rules of the supreme court are founded on the assumption that the district judge before whom a case was tried has acted in the exercise of a more liberal discretion than the supreme court can indulge.   He observes the manner of the witnesses in testifying to aid him in judging of their credibility.   The district court should grant a new trial when satisfied that injustice has been done; otherwise in many cases, where from an inspection of the record by the su-

preme court there appears evidence to sustain the verdict, and no reversal can be had, injustice may be done by local prejudice and other causes, which the district court should have prevented.

3. Fact case.— See opinion for a case in which there was no evidence to sustain the judgment.

Appeal from Harris. Tried below before the Hon. James Masterson.

Suit by Laura Bracken, for herself and in behalf of her children, against appellant, for damages claimed for the alleged negligent killing of her husband, Jacob Bracken, by the appellant's railway cars run by appellant's agents.

The defendant answered by a general denial.

There was a jury, verdict and judgment for plaintiffs for $750; motion for new trial overruled.

The appellant had a depot and platform at Harrisburg, and steps led down from the platform to the track, and a platform extended out from the hotel on the opposite side, from which there were also steps leading down to the track. On the occasion of the accident, an engine of defendant, with a coach attached, was backing down on its track in full view. A witness for plaintiff says: "I don't know how fast the engine was running; they were running pretty lively." A witness for defendant testified: ".They were running about eight miles an hour. The engineer had just given three short, sharp whistles, and the bell was ringing. The deceased descended the steps leading down from the platform and started to cross the track when the engine was within ten or fifteen feet of him, and he could not have helped seeing it if he had looked, and was struck on the shoulder by the tender and thrown against the platform supports, which knocked him back and the wheels ran over him."

There was nothing in the evidence to show that there was anything unusual, as to time, place or circumstance, in the movement of the engine and car on that occasion.

The second assignment of error is as follows: "Second. The evidence shows that the deceased approached the track of the railroad and started across it without stopping, or looking, or listening, when the view was unobstructed, and the train was near and approaching, and thereby caused his death."

A witness saw the engine coming, and as he was going to cross the track "halloed" for Bracken to look out. He did not have time to cross, and he turned to look at him (witness). "It was mighty near him when I called to him, and he turned to look at me and then the tender struck him."

Another witness says: "Deceased passed along the platform with his head down, seeming absorbed in his own thoughts."

"The engine and tender, pulling a car, was backing down in full view." Deceased "descended the steps and started to cross the track. The engineer had just given three short, sharp whistles, and the bell was ringing. I saw the man's danger, as I suppose every person on that platform did who was looking that way at all, and instinctively I called out to him to look out."

"I heard Ward, the witness, call to him, and I thought put out his hand to catch him or pull him back. The man turned to look at Ward, I presume to see who called him, when the tender struck him."

"I could see the engine coming, and so could any person on the platform who chose to look. The view is entirely unobstructed, and if Bracken had held his head up and looked he could not have helped seeing the engine coming. I suppose it was within ten or fifteen feet of him when he attempted to cross."

*E. P. Hill*, for appellant.

*W. P. Hamblen*, for appellee, cited 1 Thomp. on Neg., p. 423, § 6, and note 11.

WILLIE, CHIEF JUSTICE.— A reversal of the judgment in this case is sought on the alleged ground that the evidence does not support the verdict.

It is apparent from the proof that at the time of the accident the engine was going backwards at the rate of eight miles per hour, and was pulling with it a coach, for the purpose of making a running switch at a distance of from one hundred and fifty to four hundred feet below the point where the accident occurred. It is further apparent that the deceased placed himself in a position where the train must necessarily strike him as it passed, at a time when it was within a few feet of him,— almost upon him, as one of the witnesses expressed it. It appears further that the train was in full view from the point where deceased attempted to cross the track for a long distance, and that he did not look to the right or left, or use his senses of sight and hearing, or use any care whatever to prevent being injured. When warned of his danger by one near him, he turned in the direction of the person warning him, and then it was that he was struck by the tender, and received the wound that caused his death.

There can be no doubt but that such circumstances showed a high degree of negligence on the part of the deceased, and precluded him from recovery in the present action.   The principles applicable to such facts have been so well settled by decisions of the highest courts of the country that it is unnecessary to discuss them.   Every one about to step upon a railroad track must "listen and look before attempting to cross, in order to avoid an approaching train, and not walk carelessly into the place of possible danger."  R. R. Co. v. Houston, 95 U. S., 702.   "Failure to do so is not merely an imperfect performance of duty, but an entire failure of performance, which will bar his right to recover damages if it contributed proximately to the injury."   North Pa. R'y Co. v. Heileman, 49 Pa. St., 60.  A person who voluntarily exposes himself to such dangers as this, from which he might have saved himself by the proper use of his senses, contributes directly to his own death, and no cause of action lies for the injury.   B. & P. R. R. Co. v. Stansbury, 65 Md., 648; S. C., 4 Am. & Eng. R. R. Cases, 574.

These principles do not seem to be controverted by the counsel for appellees; but he claims that the judgment should be affirmed, because the appellant was negligent in running its engine backward by a depot, and in making a running switch under the circumstances shown by the evidence.   To justify a recovery in a case like the present, two things must appear from the evidence.  1. That the death was caused by the negligence of the defendant.  2. That the negligence of the deceased did not contribute proximately to his death.   As the evidence shows that the negligence of Bracken was the immediate cause of his death, it is unnecessary to consider the facts urged as evidence of neglect on the part of appellant.

Unless the accident was caused by the fact that the engine was running backwards or was in the act of making a "flying switch," and would not have happened but for one or the other of these facts, we cannot see what excuse they offer for the reckless negligence of the deceased.   The death of Bracken would have followed from his placing himself within a few feet of the foremost car when too late for the company's employees to stop the train before striking him, just as certainly had the engine been going forward and no switch within ten miles of it.   The authorities cited by counsel for appellees are all to the effect that due care on the part of the plaintiff must appear or the company will not be liable, although the accident happened whilst the train was backing or in the act of making a running switch, and in all of them judgment went for defendant where such care was not shown.   Hinkley v. Cape Cod R. R. Co.,

120 Mass., 257, and other authorities cited in note to page 423, 1 Thompson on Negligence.

It may be added that making a flying switch is esteemed negligence because, in such cases, cars are permitted to run over the switch after being detached from the train which had previously passed; and the negligence does not consist in allowing the engine with the balance of the train to proceed on its course after being unloosed from such car. 1 Thomp. on Neg., p. 423, sec. 6.

Appellees also claim that the question of negligence was submitted to the jury under a proper charge; that there is proof to support the verdict, and that we should not disturb it. For the purposes of this case it is not necessary for us to attempt to draw the line which separates the domain of law from that of fact in questions of negligence, and to determine when it is a question for the court and when for the jury. Admitting that it was, in this instance, properly submitted to the jury, the statement of facts fails to show that Bracken exercised any care whatsoever, but that his own negligence not only contributed to his death, but was the sole cause of it. Even had there been some proof, though insufficient, of care on his part, and an overwhelming amount of evidence to the contrary on the part of the defendant, it would have been the duty of this court to have reversed the judgment, as it has held in frequent instances heretofore. Such cases should never be allowed to reach the appellate tribunal; but in the exercise of the powers conferred on the district court, such a verdict should be set aside and a new trial granted.

Indeed, there are many instances where a verdict may be so entirely against the preponderance of evidence that the judge below should refuse to allow it to stand, when, if he should sanction it, we would be bound to indorse his action because there was sufficient proof to sustain it. His situation is different from ours. He hears the testimony delivered by the witnesses; he sees their manner of testifying, and has fair opportunities to judge of their credibility. What comes to us is all on paper, and has been passed upon before being committed to writing by a jury, and approved by the district judge. We permit the verdict to stand because there is evidence to support it, and the court below has refused to set it aside. But as was said by Judge Roberts in Chandler v. Meckling, 22 Tex., 41, "that court can and should wield a more liberal discretion in the exercise of this power," i. e., of granting a new trial, "for the purpose of securing the substantial rights of the parties, than this court. The rules of this court are founded on the assumption that the district court has acted and will act upon such liberal discretion."

We go so far as to set aside a verdict when there is not sufficient evidence to support it, but we do not disturb a verdict because the preponderance of proof is against it.  The district court may do so, and should, if satisfied that injustice has been done.  If the judge below grants a new trial only in cases where this court would reverse for want of sufficient evidence, the result is that the losing party has no remedy against the prejudices or gross errors of judgment on the part of the jury which has brought about their finding, and it will always be final except for errors of the court which may have influenced it.  The correction for verdicts against the great weight and preponderance of testimony lies with the district judge, and should be freely applied to prevent wrong and injustice to parties litigating in his court.  In the present case, however, the verdict is not only against the evidence but without any to support it, and it must be set aside; and the judgment below is accordingly reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered March 6, 1883.]