WESTERN UNION TELEGRAPH CO. v. STRACNER.

(Court of Civil Appeals of Texas. Galveston. Dec. 12, 1912. Rehearing Denied Jan. 9, 1913.)

1. TELEGRAPHS AND TELEPHONES (§ 65*)—DELAY IN DELIVERY OF MESSAGE — ACTIONS — PETITION.

A person suing for anxiety, mental pain, and anguish and distress of mind caused by his inability to attend his brother's funeral because of delay in delivery of a telegram must allege that he would have attended the funeral if he had received the telegram in time.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 54–60; Dec. Dig. § 65.*]

2. JUDGMENT (§ 250*)—CONFORMITY TO PLEADINGS.

Where facts essential to a cause of action are not pleaded, a judgment for plaintiff cannot be sustained, although such facts are shown by the evidence.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 436; Dec. Dig. § 250.*]

3. TELEGRAPHS AND TELEPHONES (§ 65*)—DELAY IN DELIVERY OF MESSAGE—ACTIONS—PETITION.

A person suing for delay in delivery of a telegram concerning his brother's death and funeral alleged that, as soon as he received the telegram, he went to the place where the

funeral was held, but arrived after the funeral, and that because of defendant's negligence and careless delay in the delivery of the message he was deprived of the comfort, solace, and satisfaction of attending the funeral, and seeing his brother before he was buried. *Held,* that this was a sufficient allegation that he would have attended the funeral if the message had been delivered in time.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 54–60; Dec. Dig. § 65.*]

4. TELEGRAPHS AND TELEPHONES (§ 66*)—DELIVERY OF MESSAGE—NEGLIGENCE.

In an action for delay in delivery of a telegram preventing the addressee from attending his brother's funeral, the evidence showed that the telegraph messenger did not deliver the message until the day following its delivery to him because of the darkness of the night and the condition of the road, and that plaintiff had left his home and gone to a camp before the messenger could have reached his home, there was no evidence that, if he had taken the message to plaintiff's home that night, it would have reached him any sooner than it did, and testimony that, because of the darkness and condition of the road, the messenger could not have gone to the camp that night was not contradicted by plaintiff. *Held,* that the evidence failed to show negligence on the part of the messenger.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 61–63; Dec. Dig. § 66.*]

5. TELEGRAPHS AND TELEPHONES (§ 37*)—DELIVERY OF MESSAGE—NEGLIGENCE.

A telegraph messenger is only required to use reasonable diligence to deliver a telegram.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 23, 24, 29, 30, 32; Dec. Dig. § 37.*]

6. APPEAL AND ERROR (§ 1177*)—REVERSAL—RENDERING FINAL JUDGMENT.

Upon reversal of judgment for plaintiff for insufficiency of evidence, where it does not appear that the evidence to support the cause of action has been fully developed, judgment will not be rendered for defendant, but the cause will be remanded for a new trial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4597–4620; Dec. Dig. § 1177.*]

Appeal from District Court, Liberty County; L. B. Hightower, Judge.

Action by L. C. Stracner against the Western Union Telegraph Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Hume & Hume, of Houston, and Geo. H. Fearons, of New York City, for appellant. H. E. Marshall, of Liberty, for appellee.

PLEASANTS, C. J. This suit was brought by appellee against appellant to recover damages for the alleged negligent failure of appellant to promptly deliver a telegram notifying appellee of the death of his brother. The cause of action as alleged in the petition is as follows: "That heretofore, to wit, on the 17th day of October, 1909, the defendant company was engaged in the business of transmitting telegraph messages for hire in various portions of the state of Texas, and in the state of Louisiana, and between places in Louisiana and places in Texas. That

on said 17th day of October, 1909, plaintiff's brother, who had previously been living near De Ridder, La., at which place defendant had a telegraph office, died, and that thereafter, on the same day, Ben Stracner sent the following telegraphic message over defendant's line from De Ridder, La., to Cleveland, Tex., to wit: 'De Ridder, La. 10/17/1909. To L. C. Stracner, Cleveland, Texas. Your brother Bud died one o'clock & thirty minutes, will be buried tomorrow at old home. Ben Stracner.' That said telegram was sent for the benefit of this plaintiff by the said Ben Stracner, and that the defendant received said message at De Ridder, and agreed to transmit and deliver said message to the plaintiff, who lived in the country some distance from Cleveland, Tex. That said message was duly transmitted immediately thereafter on said 17th day of October, 1909, and duly received at Cleveland, Tex., and thereupon the defendant company by and through its agent at Cleveland and a messenger employed for that purpose undertook to deliver said message to this plaintiff, but that said messenger, who was the agent of defendant company for that purpose, negligently and carelessly failed to deliver said message until about 8 or 9 o'clock of the 18th of October, 1909. The plaintiff here represents that he was well known, and his residence was well known to all of the people in and around Cleveland, and to defendant's agent at Cleveland, Tex.; that said message could have been delivered to the plaintiff the evening or night of October 17th, and, had said message been delivered promptly as it should have been, it would have enabled the plaintiff to take a train of the Texas & New Orleans Railway Company the next morning, or a train of the Beaumont, Sour Lake & Western Railway Company and arrive at De Ridder, La., during the day, and in time for the funeral of his brother. The plaintiff further says that said message on its face charged and put the defendant company and all of its agents upon notice of the importance and necessity of a speedy delivery. Plaintiff further says that, when said message was delivered to him on the morning of the 18th, he could not get a train out that would place him in Louisiana at De Ridder before the night of the 18th; that he actually took the first train that he could reach, and went to De Ridder, but arrived too late for his brother's funeral, and that thereby he failed to see his brother buried, and failed to see his brother before he was buried; that his said brother was buried during the day before the plaintiff could reach De Ridder. Plaintiff further says that the defendant company undertook to deliver, and did actually deliver by delay as aforesaid, the message hereinbefore set forth, and that this plaintiff paid for the delivery of same and also for the transmission of said message. Plaintiff says that, by reason of defendant's

negligence and careless delay in the delivery of said message, he was deprived of the comfort, solace, and satisfaction of attending his brother's funeral, and seeing him before he was buried; that by reason thereof this plaintiff has suffered great anxiety, mental pain and anguish, and distress of mind, to his damage in the sum of $1,995; that this plaintiff has paid the defendant company for the transmission of said message and for the delivery of same $3." The defendant answered by general demurrer and general denial. The trial in the court below with a jury resulted in a verdict and judgment in favor of plaintiff for the sum of $1,000.

The evidence shows that the telegram set out in plaintiff's petition was received by appellant at De Ridder, La., for transmission to plaintiff at 2 p. m. on Sunday October 17, 1909. At the time the telegram was delivered to appellant's agent for transmission, the sender paid the telegraph charges, and informed the agent that plaintiff lived some distance in the country from Cleveland, Tex., and guaranteed the payment of messenger fees. The message was accepted and forwarded under this guaranty, and was received by the appellant's agent at Cleveland about 5 p. m. that day. The message was not transmitted sooner because the office at Cleveland was closed during most of the day on Sunday, and the petition, as above shown, does not charge appellant with negligence in transmitting the telegram from De Ridder to Cleveland. At 5:30 p. m. on said date, appellant's agent at Cleveland procured a messenger who undertook to deliver the message to plaintiff, and left Cleveland with the message about 6 p. m. to deliver it to plaintiff at his home in the country about 16 miles from Cleveland. The message was not delivered to plaintiff until 7 o'clock the next morning, and it was then too late for him to reach De Ridder before the burial of his brother. If the message had reached plaintiff at any time before 4 o'clock in the morning of the 18th, he could and would have caught a train that would have carried him to De Ridder in time for him to have been present at the funeral, and have seen his brother's body before it was buried.

Tom Berwick, the messenger who undertook to deliver the telegram to plaintiff, testified: "Mr. Marshall [the appellant's agent at Cleveland] just gave me the telegram, and told me to take it to Mr. Stracner. I started with it, and I turned it over to Sam Young, though, and he turned it over to Mr. Stracner. I know where Mr. Young lives. I said I turned the telegram over to him. The reason why I turned it over to Mr. Young was I went by his house, and it was pretty late in the night, and I wanted to get him to go with me, and it was so late and dark he said just wait until next morning and he would take it in there, as he was going in there early. I think it was in that sawmill cutting down there and the roads was full of those old trees, but I could not tell you that a man can't go through it at night. I did not go through there at night." On cross-examination: "With reference to that time I gave that telegram to Mr. Young that night, well, I got to Mr. Young's house about 10 o'clock I think it was. Mr. Marshall gave me the telegram at the office at Cleveland about 5:30 o'clock in the evening, and I left Cleveland with it about 6 o'clock. I had to get my horse and get ready to go. I think that was on the 17th of October, the day before the telegram was delivered to Mr. Stracner." The plaintiff testified that he left his home about 6 o'clock on the evening of October 17th, and went to his logging camp in the bottom. Sam Young testified: "I live on Tarkington prairie. I live about three miles from Mr. Stracner. I know Mr. Berwick. He gave me a telegram about two years ago in October, 1909; that is, when he came there with it along in October about the 16th or 17th, I disremember, but it was the 17th I believe. Mr. Berwick came to my house is how he happened to see me. It was between 9 and 10 o'clock at night that he gave the telegram to me. I do not remember, but it was about that time of night. He told me to take it to Mr. Stracner, that it was a telegram. I taken it and delivered it to Mr. Stracner. When I delivered it to Mr. Stracner, it was about sunrise. The sun was just rising I reckon, about 6 o'clock, somewhere along there, I don't remember. The reason why I did not take it that night was they had been working the timber in there, and the road was all cut up, and it was just as dark as it could be, and I told him I would take it the next morning. I told him I was going that way, and I would take it the next morning so he could catch that Fouts train. That was the reason he did not take it himself because the road was dark. No, sir; he could not get through with it. I do not believe he could. He left it with me to deliver, and, when daylight come, I delivered it. * * * When I got that telegram that night, Mr. Stracner had done gone to his camp at that time was the reason I did not take it to his home. Mr. Stracner generally left to go back to his camp about 3 or 4 o'clock in the evening in the daytime. He did not want to go those dark roads either." On cross-examination: "I know that road in the daytime, but not at night. I could not say that anybody knew them at night, but I expect there is people that go through them woods. There is a main dim road through there that I could not hardly get through for stumps when it is cloudy myself." This witness further testified that he could not have gone over these roads that night if he had taken the telegram to plaintiff's house.

The only issue of negligence submitted to the jury by the charge was "whether or not Berwick, who undertook to carry the mes-

sage to plaintiff, who was about 16 miles distant from Cleveland, was guilty of negligence in carrying said message to plaintiff as he did." By the first assignment of error appellant complains of the judgment on the ground that there is no allegation in the petition that plaintiff could, and would, have been present at his brother's burial but for defendant's negligence.

[1, 2] It was necessary, to entitle plaintiff to recover, that he allege and prove, not only that he could, but that he would, have gone to his brother's funeral. Facts proven, but not alleged, will not support a verdict, and, if the petition is defective in the respect above mentioned, the judgment cannot be sustained, notwithstanding the uncontradicted evidence shows that plaintiff could and would have attended his brother's funeral but for his failure to sooner receive the telegram. Telegraph Co. v. Bell, 42 Tex. Civ. App. 462, 92 S. W. 1036.

[3] The petition before set out does not allege in so many words that plaintiff would have gone to his brother's funeral if the telegram had been more promptly delivered, but it does allege that he did go on the morning of the 18th as soon as he received the telegram, but arrived at De Ridder after his brother's funeral, "and that by reason of defendant's negligence and careless delay in the delivery of said message he was deprived of the comfort, solace, and satisfaction of attending his brother's funeral, and seeing him before he was buried." Giving to these allegations their reasonable intendment, we think they amount to the allegation that plaintiff would have attended his brother's funeral but for the negligence of appellant in not delivering the telegram more promptly, and are sufficient to admit evidence of that fact. We think the language of these allegations sufficiently conveys the idea that plaintiff would have been present at his brother's funeral but for the delay in the delivery of the telegram, and such idea is not a mere matter of surmise or inference. The allegations in the petition in this case are not the same as in the petition in the case of Telegraph Co. v. Bell, 42 Tex. Civ. App. 462, 92 S. W. 1036, and we think the opinion in that case is not in conflict with the views above expressed. In the case of Telegraph Co. v. Smith, 133 S. W. 1062, the allegations of the petition are almost identical with the petition in this case, and one of the assignments presented by appellant and discussed in the opinion of the court raises the question of whether the petition sufficiently alleges that the plaintiff would have gone to his brother before his death but for the failure of the telegraph company to make timely delivery of a telegram notifying him of his brother's sickness. The court in the opinion cited states the question presented, and says that such allegation was necessary, but does not decide whether or not the allegations of the petition under consideration were sufficient in that respect. It may be inferred from the language of the opinion that the court thought, or were inclined to think, that the allegations were insufficient, but it is not expressly so decided, and the judgment was reversed upon other grounds. In view of the possible conflict in this decision and the opinion in the Smith Case, supra, to save any question, the petition upon another trial should be amended.

[4, 5] Under appropriate assignments of error appellant assails the verdict on the ground that the evidence is insufficient to sustain the finding that the messenger Berwick was negligent in making delivery of the telegram to plaintiff as he did. We think these assignments should be sustained. Plaintiff had left his home and gone to his camp in the bottom long before the messenger could have gotten there, and there is no evidence tending to show that, if Berwick had carried the message to plaintiff's home, it would or could have been delivered to him sooner than it was. There is evidence contradicting the statement of the witness Young that on account of the darkness and the bad condition of the road he did not believe Berwick could have delivered the message to plaintiff in the bottom that night. Plaintiff, who testified in the case, did not claim that the messenger could have reached him in the bottom that night, and did not contradict Young's statement as to the darkness of the night and the condition of the road. The messenger was only required to use reasonable diligence to deliver the telegram, and we do not think his failure to attempt to find plaintiff in the bottom that night under the circumstances shown by the evidence shows a lack of such diligence on his part.

[6] From the statement of the testimony before set out it is seen that the testimony upon the question of whether the messenger Berwick was negligent in not delivering the message to plaintiff at his camp on the night of October 17th is meager, and upon this issue the evidence does not appear to have been fully developed. For this reason, while we agree with appellant that the evidence adduced is not sufficient to sustain the verdict, we do not think we should here render judgment for appellant, but that the judgment should be reversed and the cause remanded, and it has been so ordered.

Reversed and remanded.