**TEXAS & P. RY. CO. v. RAY et al.***
(No. 9637.)

(Court of Civil Appeals of Texas. Dallas.
June 5, 1926. Rehearing Denied Oct. 16,
1926.)

**1. Railroads ⚖═350(19).**

Automobile passenger's and driver's failure
to look and listen for last 100 yards before going
upon railway track *held* not contributory negli-
gence as matter of law.

**2. Negligence ⚖═136(9).**

Where evidence is such that reasonable
minds may differ, question of contributory neg-
ligence is for jury.

**3. Appeal and error ⚖═930(1).**

In considering sufficiency of evidence to sup-
port verdict, appellate court must consider evi-
dence most favorable to plaintiff and reject all
evidence favorable to defendant.

**4. Railroads ⚖═348(1).**

Evidence *held* sufficient to sustain recovery
against railway company for death of automo-
bile passenger at crossing.

**5. Trial ⚖═351(5).**

In action for death of automobile passenger
at crossing issues as to contributory negligence
submitted in main charge *held* sufficient.

**6. Trial ⚖═352(1).**

In action for death of automobile passenger
at railroad crossing, requested special issues as
to contributory negligence *held* properly refused
as ignoring and withdrawing evidence as to
precautions taken.

**7. Trial ⚖═350(2).**

Statute contemplates that special issues
shall require jury to find ultimate facts and not
merely evidentiary facts that may tend to estab-
lish ultimate fact.

Vaughan, J., dissenting.

Appeal from District Court, Grayson Coun-
ty; Silas Hare, Judge.

Action by B. L. Ray and others against the
Texas & Pacific Railway Company. From a
judgment for plaintiffs, defendant appeals.
Affirmed.

Head, Dillard, Smith, Maxey & Head, of
Sherman, for appellant.

Lawther, Pope, Leachman & Lawther, of
Dallas, and Wood & Wood, of Sherman, for
appellees.

LOONEY, J. Appellees, the surviving
children of W. M. Ray, deceased, filed this
suit against appellant for damages on account
of the death of their father, alleged to have
been caused through the negligence of appel-
lant in a collision between an automobile
driven by J. H. Plangman, in which deceased
was riding, and a passenger train of appel-
lant, on October 12, 1923, at a public crossing
known as Pratt's Crossing in Kaufman coun-
ty, Tex.

Appellees alleged negligence in (a) the fail-
ure of appellant's operatives to blow the
whistle and ring the bell on the engine as re-
quired by the statute; (b) the failure of said
operatives to keep a lookout for persons upon
or going upon the crossing.

Appellant answered by general denial, and
specially that Plangman and deceased were
at the time engaged in a joint and common
enterprise, and that they were each and both
guilty of contributory negligence in failing to
look and listen for the approach of a train
or to exercise any care to discover the ap-
proach thereof.

The jury found in response to special is-
sues that the operatives upon the engine on
the occasion in question failed to blow the
whistle at a distance of 80 rods from the
crossing where the collision occurred, and
failed to ring the bell on the engine at a
distance of at least 80 rods from the crossing
and to keep same ringing until the crossing
was reached, and that such failure was the
proximate cause of the collision; that said
operatives failed to keep a lookout for per-
sons upon or going upon the crossing such as
a person in the exercise of ordinary care
would have done; and that such failure was
negligence and the proximate cause of the in-
jury.

The evidence in our opinion warranted
these findings, and, to that extent, are adopt-
ed as our conclusions; other conclusions will
be stated in connection with the propositions
to which they relate.

1. Appellant contends that both Plangman,
the driver of the automobile, and the de-
ceased were guilty of contributory negligence
as a matter of law and that the trial court
erred in refusing at its request a peremptory
instruction for a verdict in its favor. The
facts bearing on this issue are these:

Deceased and Mr. Plangman were travel-
ing east on the public highway between Ter-
rell and Wills Point, on the north side and
parallel with the railway track, in an open
prairie country with nothing to obstruct the
view of either the travelers on the highway
nor of the operatives on the engine. As to
the precaution observed by Plangman and de-
ceased to discover an approaching train,
Plangman, the only witness on this point,
testified as follows:

"As we approached this track crossing on the
day of the collision Mr. Ray and I discussed the
crossing. That was perhaps a half mile before
we reached the crossing. Mr. Ray was on my
right and I was at the steering wheel to the left.
Mr. Ray was on the side next to the railroad
track. * * * We were riding in a one seated
coupé, a two-passenger car. I could see in front
of me as we approached the crossing. I could
not see a train coming from the rear without
turning around and looking back. After we dis-
cussed the crossing in approaching it, Mr. Ray
looked back several times to my knowledge, and
I looked back twice or three times myself.

There was one time I bent around Mr. Ray and the other time I looked through the rear glass, looking back. We were not expecting the Sunshine Special at that time, because I did not know when it would come. We were looking for any train, freight or passenger, or whatever it might be. I looked back twice. I could not say how many times Mr. Ray looked back; he may have looked back a half dozen times. I know he looked back two or three times when I observed him looking back. * * * I never drive fast and was not driving faster than 20 miles anywhere along there; when we got in 200 yards of the crossing I didn't think I was driving over 12 or 15 miles an hour, and at the time we approached the railroad, possibly not over 10 or 12 miles an hour I would judge. * * * From the time about a half mile west of the crossing when Mr. Ray and I first discussed the crossing up to the time of the collision, if the train ever whistled I did not hear it; I certainly was listening for the train. We were watching for the train, certainly trying to avoid the very thing that happened, naturally; that was absolutely the object we had in view in looking back. As far as I know the train never did whistle before the collision, and I do not know that it whistled then. I never heard the whistle at all. The train did not whistle from the time Mr. Ray and I first talked about it up to the time the train struck the car. If it did I did not hear it. I did not hear any whistle of any kind. There was no danger signals or anything like that. I first knew that a collision was imminent as I rounded the curve in this road approaching the track. * * * I would not think the pilot of the engine of the defendant was over 50 or 75 feet from me when I first saw it; it was right on us. I could not tell you how fast the train was running at the time. I heard the roar of the train and looked up and saw it coming. It was running pretty fast, but I do not know how fast and could not estimate it. It was running like a train at full speed, but I could not say how fast. There was no slack of the speed from the time I saw the train until it hit us that I could detect; it was just an instant from the time I saw the train until the crash. I had on the brake and had my hand on the reverse lever."

On cross-examination he testified:

"About a half mile before we got to the crossing the fact that we were approaching this crossing was talked about between Mr. Ray and me, and, between the time we commenced talking about it and up to the time of the collision, I looked back twice, and I think Mr. Ray looked back three times, to see if a train was coming.

"Q. Now isn't it a fact that the last time you looked back and the last time he looked back you were about 100 yards from the crossing? A. My best recollection is that we might have been a little less or a little more than 100 yards from the crossing.

"Q. The last time you looked and the last time you saw him look you were a little over 100 yards from the crossing? A. Yes sir, that is the best of my recollection."

Redirect examination:

"I was listening and looking for a train. The first I knew of the coming of the train was hearing the rumble of the train, the roar and rush of the train would not make as much noise as a steam whistle; I could hear a steam whistle further than I could hear the rumble of the train, and I think I could hear the ringing of the bell further than I could hear the rumble of the train. Mr. Ray was looking out and listening for the train and discussing it. To my certain knowledge he was. I would think he was in position where he could have heard the whistle and the ringing of the bell if they had been sounded."

Recross-examination:

"When we were back there talking about that crossing I said to Mr. Ray, 'You look to the west, and I will look to the east.' Mr. Ray was on the south side, next to the track. I thought he was in better position to see a train coming from the west than I would be, and I asked him to look to the west, and he said he would, and I told him I would look to the east."

Redirect examination:

"Mr. Ray looked back to the west when I told him to; he looked back three or four times to my certain knowledge. I was driving, and naturally had to direct a good deal of my attention to my car.

"You told Judge Maxey you thought that 100 yards before you reached the crossing was the last time you looked back? A. Yes sir; something like that.

"Q. I believe you said it was 100 yards or less? A. It might have been less or more. Of course, Judge, distance—a man cannot accurately judge distance in a case of that kind.

"Q. Did Mr. Ray look back after that time himself? A. I did not see him look back.

"Q. You would not say he didn't look back after you looked back? No sir; the last time I saw him look back was when I looked back something like 100 yards from the crossing."

[1] Appellant's contention under this assignment is that Plangman and the deceased failed in the exercise of due care for their own safety, in that it did not appear that they looked or listened at a time and place when, by looking and listening, they would have discovered the approaching train in time to have avoided the injury, and that such failure on their part constituted negligence as a matter of law.

The evidence shows very satisfactorily that Plangman and the deceased knew they were approaching the crossing and appreciated the necessity for looking and listening for an approaching train. A half mile west of the crossing the subject was discussed by them, and thereafter until they reached a point about 100 yards west of the crossing they looked and listened repeatedly. There is no evidence, however, that they either looked or listened within the last 100 yards as they approached the crossing.

Appellant's argument is that it is not every "looking" and "listening" that will meet the requirements of the law and relieve one from negligence; that to look and listen when a train could neither be seen nor heard, and fail to look and listen at a time and place when its approach would be discovered, and

the injury avoided, is not the exercise of such care as the law contemplates. Appellant's contention in this respect, however correct as a statement of the law, ignores completely the right of the jury to find from the evidence that as Plangman and deceased exercised commendable care by looking and listening to a point about 100 yards of the crossing, and, neither seeing nor hearing a train approaching, and as no signal heralding the approaching train was given, they could assume that there was no train approaching within 'the statutory signaling distance, and hence could safely proceed without further looking or listening, and, in so doing, were in the exercise of due care. The question was, in our opinion, essentially one of fact for the jury and not of law for the court.

The rule on the subject, reannounced by Chief Justice Phillips in Trochta v. Railway Co. (Tex. Com. App.) 218 S. W. 1039, is as follows:

"Under the facts of this case there is in our opinion no warrant for not applying to it the general rule prevailing in this state, that the failure of one about to go over a public railroad crossing to look and listen for an approaching train, does not, of itself, constitute negligence as a matter of law. Here, the question as to whether, under all the circumstances, Trochta was guilty of negligence in not looking or listening for the train, was for the jury. The jury determined it against the defendant."

The language employed by the court in Hines v. Arrant (Tex. Civ. App.) 225 S. W. 768, is peculiarly applicable to the case at bar. The court said:

"If every one injured in a railroad collision who could by looking and listening discover the approach of the train before going upon the track is to be charged with contributory negligence, it would be difficult to find an instance in which that defense would not be fully established. The situations are exceedingly rare in which travelers cannot, if they will,' ascertain whether or not it is safe to attempt a crossing. But the legal test is, not what the traveler could have done had he used his senses, but what an ordinarily prudent person would have done under the particular circumstances. Hence the courts have held that the failure to look and listen before going upon a railway track is not, as a matter of law, contributory negligence." Trochta et al. v. M., K. & T. Ry. Co. (Tex. Com. App.) 218 S. W. 1038; Frugia v. T. & Ft. S. Ry. Co., 36 Tex. Civ. App. 648, 82 S. W. 814; H. & T. C. Ry. Co. v. Wilson, 60 Tex. 142.

Other cases could be cited to the same effect, but they would add nothing to a better understanding of the rule so clearly enunciated in the cases just cited.

[2] There are cases and cases, each depending on its own facts, but the rule of law applicable to all alike is that, where the evidence is such that reasonable minds may differ, as we conceive the case at bar to be, determination of the question is for the jury. We need not decide whether or not Plangman and deceased were at the time engaged in a joint enterprise, for, even if they were, as contended by appellant, still, the jury on a proper submission having acquitted Plangman of contributory negligence, that question became immaterial.

We therefore overrule appellant's assignments in which complaint is made of the refusal of the court to direct a verdict in its favor.

2. Appellant makes the further contention that even if the evidence was sufficient to require the court to submit the case to the jury, nevertheless the court erred in refusing to set aside the verdict of the jury on the ground of insufficient evidence to support the same as to (a) the negligence of appellant in the failure of its operatives to keep a lookout, to blow the whistle and ring the bell; (b) the contributory negligence of Plangman, the driver of the car, and deceased; and (c) the excessiveness of the verdict.

[3, 4] The evidence was sharply conflicting and admitted of different conclusions, but, from this conflict, the jury brought forth their verdict, free from any suspicion of improper influence or motives; therefore, considering the evidence most favorably for appellees and rejecting all evidence favorable to appellant, as under the rule controlling in such a situation we must do, it is our opinion that the verdict of the jury on all issues is sustained by the evidence.

In Barron v. H. E. & W. T. Ry. Co. (Tex. Com. App.) 249 S. W. 826, the court said:

"When an appellate court undertakes to overturn the verdict of a jury, it must consider the evidence in the record most favorably for the plaintiff from the position of the injured party just before and at the time of the accident, rejecting all evidence favorable to the defendant. The jury had a right to so consider the evidence and the reviewing court must so consider it. This very holding, practically in those very words, was made by our Supreme Court in the case of Kirksey v. Traction Co, 110 Tex. 190, 217 S. W. 139."

See, also, Trochta v. M., K. & T. Ry. Co. (Tex. Civ. App.) 181 S. W. 762, Id. (Tex. Com. App.) 218 S. W. 1038; H. & T. C. Ry. Co. v. Wilson, 60 Tex. 142; Harrell v. Railway (Tex. Com. App.) 222 S. W. 221; G., C. & S. F. Ry. Co. v. Anderson, 76 Tex. 245, 13 S. W. 196.

We therefore overrule all assignments calling in question the sufficiency of the evidence to sustain the verdict of the jury.

[5-7] 3. Appellant complains of the action of the court in refusing to submit, at its request, special issues relating to the alleged contributory negligence of Plangman and deceased in lieu of the submission contained in the main charge.

In the main charge the court submitted the following:

"In approaching the crossing upon the occasion in question did the deceased, W. M. Ray,

fail to exercise that degree of care which an ordinarily careful and prudent person would have exercised under the same or similar circumstances to discover the approaching train in time to have avoided the accident? Was such failure, if any, the proximate cause of the collision?"

The court in its questions Nos. 11 and 12 made a similar submission with reference to Plangman.

Appellant requested the court to give in lieu of said questions the following, which were refused:

"Did W. M. Ray, while the automobile was approaching the crossing where the collision occurred, fail to look and listen for the approach of the train at such time and such distance from the crossing as a person in the exercise of ordinary care for his own safety would have done under the same or similar circumstances? Was such failure, if you find he did fail, of said W. M. Ray, negligence? Did such negligence, if any you find, on the part of said W. M. Ray, directly and proximately cause, or contribute to cause, the collision, and his injuries and death?"

Similar request for submission with reference to Plangman was made by appellant, and refused. The point urged by appellant under this assignment is that the submission of the issue of contributory negligence by the court was too general, and that the requested submission cured this defect and should have been given.

The issue being tried was whether or not Plangman and deceased exercised ordinary care to discover the approach of the train in time to avoid the accident. So far as the evidence goes, there was no way to discover the approach of a train except by looking and listening. The evidence as to when, where, and how often Plangman and deceased looked for a train before reaching the crossing was before the jury, together with evidence as to all related facts that the jury may have thought excused them from listening and looking at any particular place enroute and still be in the exercise of ordinary care. Under the submission by the court, the jury must have understood that the issue could only be determined by finding from all the facts and circumstances in evidence whether or not Plangman and deceased exercised ordinary care by looking and listening for the approach of a train at such time and distance from the crossing to avoid a possible accident. It is our opinion, therefore, that the requested charges, if given, would have carried to the jury the same meaning as that contained in the charge given by the court. Furthermore, it is our opinion that the requested charges as applied to the facts of this case are incorrect, for the reason that the evidence with reference to the precaution observed by Plangman and deceased in approaching the crossing, and the failure of appellant to give either the statutory or any warning signals in approaching the crossing, is ignored and in effect withdrawn from the jury. The statute contemplates that special issues shall require the jury to find ultimate facts and not merely evidentiary facts that may tend to establish the ultimate fact. To disassociate any fact, or group of facts, and require a finding thereon without reference to related facts that should be considered in determining the ultimate fact sought to be established, will lead to confusion, contradiction, and mistrials. We therefore overrule appellant's assignments based on the refusal of the court to give its requested charges.

After carefully considering all assignments and propositions urged by appellant, and finding no reversible error, the judgment of the trial court is affirmed.

Affirmed.

VAUGHAN, J. (dissenting). The writer deeply regrets his inability to bring his views of this case in accord with those of the majority opinion. The professional and personal high regard in which he holds his brethren caused him to reach the conclusion resulting in his dissent through a careful and cautious investigation, more in an effort to accede to their opinion than to reinforce his views in opposition to theirs. Therefore it is with much hesitancy that he expresses this his dissent from the conclusion reached by the majority opinion on the following propositions:

I. That the undisputed evidence established that J. H. Plangman, driver of the automobile which was struck by appellant's train, and W. M. Ray, deceased, who was riding in the automobile, were joint enterprisers.

The evidence on this issue which is embraced solely in the testimony of J. H. Plangman, and is undisputed, established the following facts:

That the Sherman Grain & Seed Company is a partnership composed of said J. H. Plangman and his son, Jewell Plangman, engaged in the sale of seed of various kinds, including cottonseed. That they visit different places and give orders for cottonseed, and sell seed all over the country, wholesale and retail.

That the company had engaged the deceased, W. M. Ray, to sell cottonseed on a commission, paying him 25 cents per bushel on all cottonseed sold by him for the company. That Ray would take orders from the farmers and report same, and the orders were filled by the company. That Ray had formerly lived down about Wills Point, and after a trip there reported to the company that he had located some good seed at that place, and had taken orders for 700 or 800 bushels. That he had gotten a price on the seed at Wills Point, and at the time of the collision he and Plangman were on their way to Wills Point to close the deal for and receive the

seed. That deceased, Ray, was not only to fill the orders he had theretofore taken out of the seed they were going to buy at Wills Point, but was to solicit and receive orders for seed to be filled out of the seed to be purchased on this trip at a commission of 25 cents per bushel. This the writer thinks is sufficient to establish conclusively that J. H. Plangman and W. M. Ray, deceased, were joined in a common or joint enterprise. This being true, on the evidence establishing that Plangman was negligent on the occasion in question, such negligence would be imputed to deceased, Ray. The rule that the negligence of the driver of a vehicle is not imputed to an invited guest is settled and established beyond controversy, and, it may be said, as equally as well settled as a rule that where persons are engaged in a joint purpose or enterprise, in the use of a vehicle, the negligence of the driver is imputable to his joint enterpriser. Was the deceased, W. M. Ray, a guest of J. H. Plangman, or an enterpriser with him?

The writer is of the opinion that under the undisputed evidence of J. H. Plangman, supra, the deceased, Ray, was not within the rule applicable to invited guests or passengers, but, on the contrary, was engaged in a common purpose, and was a joint enterpriser with Plangman. This conclusion is undoubtedly supported by the following authorities: W. & O. R. Ry. v. Zell's Administratrix, 118 Va. 755, 88 S. E. 309; Van Horn v. Simpson et al., 35 S. D. 640, 153 N. W. 883; Wentworth v. Town of Waterbury, 90 Vt. 60, 96 A. 335; G. H. & S. A. Ry. Co. v. Kutac, 72 Tex. 653, 11 S. W. 127; Johnson v. G., C. & S. F. Ry. Co., 2 Tex. Civ. App. 139, 21 S. W. 276.

II. That because of the contributory negligence of the deceased, Ray, and J. H. Plangman the trial court erred in refusing to give the peremptory charge requested by appellant, instructing the jury to return a verdict for appellant.

The undisputed evidence in this case shows that J. H. Plangman, driver of the automobile which was struck by appellant's train, and W. M. Ray, deceased, who was riding in the automobile, were riding in the automobile on a joint enterprise. That they were both familiar with the location of and knew that they were approaching a public crossing, where the collision occurred. That the crossing is in an open and prairie country. That the collision occurred in the daytime, and there was nothing to obstruct their view or to prevent them from seeing the train in ample time to have avoided the collision. That if they had looked at any point from about 100 yards from the crossing up to the crossing they could and would have seen the train. That they and each of them failed to look at any place within said distance of the crossing, the only evidence on this material point being furnished by the testimony of J. H. Plangman, viz.:

"About a half a mile before we got to the crossing, the fact that we were approaching this crossing was talked about between Mr. Ray and me, and between the time we commenced talking about it and up to the time of the collision I looked back twice, and I think Mr. Ray looked back three times, to see if a train was coming. * * * "

"Q. Now, isn't it a fact that the last time you looked back and the last time he looked back you were about 100 yards from the crossing? A. My best recollection is that we might have been a little less or a little more than 100 yards from the crossing.

"Q. The last time you looked and the last time you saw him look, you were a little over 100 yards from the crossing? A. Yes, sir; that is the best of my recollection."

On redirect examination.

"Q. Did Mr. Ray look back after that time himself? A. I did not see him look back.

"Q. You wouldn't say he didn't look back after you looked back? A. No, sir; the last time I saw him look back was when I looked back something like 100 yards from the crossing."

That J. H. Plangman drove the automobile around a truck which had been stopped about 50 feet from the crossing to wait until the train passed over the crossing, and drove onto the crossing where the train was a short distance therefrom, and in plain view of the crossing, without either of them making any effort to ascertain whether or not there was a train approaching the crossing immediately before driving the car thereon.

From this state of facts, the writer can draw but one conclusion consistent with the acts and conduct and surroundings of the parties immediately before and at the time of the accident, viz., that they and each of them were guilty of contributory negligence as a matter of law, and therefore the trial court erred in refusing to give the peremptory charge requested by appellant. The following authorities are cited as justifying this conclusion: Railway Co. v. Bracken, 59 Tex. 71; Railway Co. v. Kutac, 72 Tex. 647, 11 S. W. 127; Railway v. Dean, 76 Tex. 73, 13 S. W. 45; Railway v. Moss, 4 Tex. Civ. App. 318, 23 S. W. 475; Railway v. Fuller, 5 Tex. Civ. App. 600, 24 S. W. 1090; Turner v. Railway (Tex. Civ. App.) 30 S. W. 253; Railway v. Kauffmann, 46 Tex. Civ. App. 72, 101 S. W. 817; Teetz v. Railway (Tex. Civ. App.) 162 S. W. 1000; Railway v. Hart (Tex. Civ. App.) 178 S. W. 796; Railway v. Price (Tex. Com. App.) 240 S. W. 526; Frias v. Railway (Tex. Civ. App.) 266 S. W. 549; International & Great Northern Ry. Co. v. Will Edwards, 100 Tex. 22, 93 S. W. 106. From the last cited case the following quotation is made as being peculiarly applicable to the instant case.

"The law is well settled that a traveler approaching a railroad crossing must exercise ordinary prudence in going upon the track to see that he may do so with safety. He cannot excuse the absence of all care by showing that those in charge of a train have also been guilty

of negligence. This is the precise attitude of the plaintiff, when he claims that he was not bound to look out for himself until the statutory signals were given. His claim cannot be admitted without denying the rule which exacted the duty of due care on his part, a duty as binding on him as was the duty of giving signals binding on the defendant. The case is easily distinguished from those in which this court has held that, under the facts thereof, it would have been improper for the courts to have instructed that it was the duty of the travelers to do any particular thing as a measure of due care, such as to look and listen, it being the function of the jury to say what precautions were called for by the particular situation. Those cases presented issues for the jury to determine as to whether or not the care taken was sufficient, and not bare facts, like those in this case, establishing that no care whatever was taken and offering no excuse for its absence except a reliance on the other party."

The following evidence, in the opinion of the writer, is quite significant, in fact becomes very important in its influence when considered in connection with the entire environments of the case as established by other facts without controversy in the testimony:

"When we were back there talking about that crossing, I said to Mr. Ray, 'You look to the west, and I will look to the east.' Mr. Ray was on the west side next to the track. I thought he was in better position to see a train coming from the west than I would be, and I asked him to look to the west, and he said he would, and I told him I would look to the east." "The train did not whistle from the time Mr. Ray and I first talked about it up to the time the train struck the car; if it did, I didn't hear it. I did not hear any whistle of any kind. There were no danger signals or anything like that. I first knew that a collision was imminent as I rounded the curve in this road approaching the track. I said to Mr. Ray, 'My God, Dad, yonder she comes.' I always addressed Mr. Ray as Dad. He said, 'Yes; she is going to get us,' or something like that."

This evidence shows, if it is proof of anything that Plangman and Ray had, at the time of all times when they should have exercised due care, failed to exercise for their own safety that degree of care that a person of ordinary prudence would have exercised under like or similar circumstances, and from some cause had ceased to exercise the care that they had exercised until they had reached within 100 yards of the crossing, and from that point on were relying entirely on appellant to perform its duty in giving the crossing signals required of it by law in order for them to pass over said crossing in safety. Surely such an interpretation of the law of actionable negligence should not be sanctioned, for it would be but to hold the appellant liable for injuries flowing from affirmative acts of negligence for which no excuse is reflected in the evidence, and without

which the collision resulting in the death of W. M. Ray could not have occurred.

Because the evidence established not only that Plangman and deceased, Ray, were engaged in a joint enterprise at the time of the collision, and therefore the negligence of Plangman was imputable to the deceased, Ray, but because both were guilty of contributory negligence as a matter of law, appellant was not liable for the injuries resulting in the death of W. M. Ray. It is the opinion of the writer that the trial court erred in refusing to give the peremptory charge requested by appellant, and that the judgment rendered on the verdict of the jury should be reversed and cause rendered by this court for the appellant.