## TEXAS & N. O. R. CO. v. SINGLER.
### No. 8392.

Court of Civil Appeals of Texas. San Antonio. May 14, 1930.

Rehearing Denied June 11, 1930.

Kleberg & Eckhardt and John C. North, all of Corpus Christi, for appellant.

Tarlton & Lowe, of Corpus Christi, for appellee.

COBBS, J.

Appellee sued appellant to recover $40,000 damages for alleged personal injuries sustained by him as the result of a collision between appellant's train and appellee's automobile at a street crossing in the town of Rockport, Tex. Appellee alleged that he was operating an automobile going from the town of Rockport toward the southern city limits and, at the time he attempted to cross appellant's track on Church street, a train of coal cars was backed across said street, striking appellee's automobile and injuring him.

The specific grounds of negligence alleged are:

"(a) That defendant knew it was a dark night and was negligent in backing the train across the street without bringing the same to a stop.

"(b) The defendant was negligent in locating the crossing at a point removed from the lights of the town of Rockport and in locating its crossing sign at a place not visible at a distance of more than fifteen or twenty feet from the crossing, and that the peculiar location of said crossing rendered same dangerous and that defendant failed to place a light at said crossing.

"(c) That defendant was negligent in constructing the crossing at a point on Church Street where the same was not visible on a dark night and such location constituted a hazard to the public to an extent rendering it a dangerous crossing.

"(d) That defendant's train being backed across the crossing was approximately three hundred yards long and approached same from around a curve away from plaintiff, and defendant was negligent in backing its train of cars across the street on a dark night without bringing same to a stop, and in failing to post a flagman at the crossing.

"(e) That defendant was negligent in failing to ring the bell or sound the whistle at least eighty rods from the crossing, and that it was negligent in failing to have an employee stationed on the rear of the train to signal the engineer to stop when plaintiff's automobile came on its track and to warn persons crossing its track."

The defendant answered, pleading: (a) General and special exceptions; (b) general denial; (c) contributory negligence on the part of plaintiff in the manner in which he approached said crossing and in failing to exercise any care in looking out for defendant's train; (d) special answer pleading contributory negligence on the part of plaintiff in approaching said crossing at an excessive rate of speed and at a rate of speed in violation of law; (e) special answer pleading the Interstate Commerce Act and Transportation Act of 1920 (49 USCA § 1 et seq.), and grounds alleging wherein same were applicable to, and a defense to, this case; (f) special answer pleading that the act requiring the bell to be rung eighty rods from the crossing did not apply to a train being backed, and is unconstitutional.

Plaintiff by supplemental petition urged general and special exceptions to defendant's answer.

The court overruled defendant's general and all special exceptions and overruled plaintiff's general demurrer and special exceptions II and III to defendant's answer, and sustained plaintiff's special exceptions IV and V to defendant's said answer, and submitted the case to the jury upon special issues, and upon the answers of the jury to such special issues rendered judgment for plaintiff in the sum of $18,500.

Though there are questions of law raised, this is really a fact case.

Appellant's first ground of objection goes to the ruling of the court in refusing to give appellant's requested charge for a verdict. We do not think this was error, certainly not from the standpoint of the facts, and we do not think from the standpoint of the law involved in the submission of the issue, as we will show by our discussion.

This was a dangerous crossing. Appellee crossed it about an hour and a half before the accident, in going into Rockport, and at the time of the accident was leaving Rockport. It was a dark, windy, and a cold night. It was shown that the right-hand side of Church street is perfectly clear and level for some distance with no objects to obstruct the line of vision and view of the railroad track from the time it branches off of the main line of the road. That for at least 300 yards before you reach the crossing on the right-hand side, there are no houses, timber, or any objects to break the view of the railroad track clear up to the main line.

The witness Kring testified that he came into Rockport that night from Aransas Pass about the time of the accident, crossed the main line and saw headlight of an engine backing toward the crossing, and stated:

"Driving along the road after I had passed the crossing, I could see the dim outline of the train moving along the track—couldn't distinguish between the cars, but could see the dim objects. Could tell there was a train there all right, could distinguish the cars and see the moving object of the train passing there. Could see the train from one end to the other—couldn't distinguish the spaces between the cars—but could see the objects and see both ends of that train, and could see the train all the time from the time I passed the first crossing on the main line until I came on around to the crossing and came to a stop."

This witness was traveling east along the road designated "State Highway 57."

Appellee testified as follows:

"I could not determine definitely just where the crossing was located as I drove along that night, but I could tell within about twenty or thirty steps where it was, fifteen or twenty steps I mean. Was keeping lookout for crossing, for I had passed over it just a short time before and knew it was a pretty rough crossing. Did not see a string of cars being pushed across the road as I approached crossing. First observed this string of cars when I was within about 30 or 40 feet of the crossing * * * cars traveled at about the same rate of speed I was traveling, 18 or 20 miles an hour. Made an effort to dodge those cars, making a quick swerve to the left, was not successful, the end of car striking my car and turning it over. First time I knew train was approaching crossing was when end of car came within my lights on the edge of the shell. It was just at the edge of the shell when I first saw it."

On cross-examination he testified:

"I had slowed my car down to a speed of about 18 or 20 miles an hour and my brakes were in good condition. It might be true that you can stop a Ford car or any other car within 25 or 30 feet when your brakes are in good condition and you are not making more than 18 miles per hour if you are driving along slow and careful until you went to put them on * * * don't believe it a fact that I could have stopped my car before I ran onto the crossing if I had put on brakes when I saw car loom up * * * going at a speed of 18 to 20 miles an hour, I say that I could have stopped that car within 35 or 40 feet by putting my brakes on * * * don't know how long it takes to stop a Ford car going 18 or 20 miles an hour when you put your brakes on. When I first saw the end of this car, it was almost even with the shell on the road, about on the edge of the shell, would say shell about 18 or 20 feet wide. Car struck me right at the edge of other side of road. Car had traveled from 18 to 20 feet since I had first seen it and I had traveled from 25 to 30 feet diagonally across the road during that same time."

We have copied the foregoing from appellant's brief on the question of appellee's al-

leged contributory negligence, if any. The right to recover, of course, depends largely upon the negligence in the construction of the railway at the alleged dangerous place and in failing to have a light on the end of the train, and in respect to the alleged conduct on plaintiff's part at and prior to the accident, and in his own manner of approaching the crossing and in crossing same.

We think it was proper to submit the question of dangerous crossing and lights to the jury.

It may not have been a dangerous crossing in the daytime, or when lighted up at night; but the accident occurred on an unusually dark night. What we may think individually, based upon the map displayed, cannot as a matter of evidence be used to set aside the finding of the jury upon the same subject. The train at the time was being backed down the track. There was no man posted at the place to keep a lookout, and there was no stationary light there. The only claimed light was the one held by an employee on the train, which was so held that appellee could not see it.

It is held in Galveston, H. & S. A. Ry. Co. v. Bracken, 59 Tex. 71, that one approaching a railroad crossing, whose view of the track is unobstructed, cannot as a matter of law recover damages for injuries sustained in his effort to cross the track regardless of what the negligence of defendant might be. In other words, the law will neither encourage nor approve of the negligent acts of a party throwing aside all caution and walking, as it were, "into the very jaws of death." But the jury question here is: Was appellee in making the crossing using some degree of care for his own safety, having knowledge that it is a dangerous crossing?

The court submitted to the jury special issues Nos. 1, 2, and 3, which, with the answers of the jury, are as follows:

"Special Issue No. 1. Was the crossing maintained by the defendant railroad company on Church Street in the town of Rockport, under all the facts and conditions existing at the time of the collision in question, an unusually dangerous crossing? Answer 'yes' or 'no.' "

The jury answered: "Yes."

"Special Issue No. 2. Was the defendant railroad company negligent in failing to place a flagman at said crossing to warn persons traveling along Church Street of the approach of its train which was being pushed across this street on the night of February 11, 1928, at the time said collision took place? Answer 'yes' or 'no.' "

Answer: "Yes."

"Special Issue No. 3. Was such negligence on the part of the defendant railroad company, the proximate cause of the collision and of the plaintiff's injury? Answer 'yes' or 'no.' "

Answer: "Yes."

It is a sharply contested issue of fact as to whether or not appellee did all he could under the circumstances to avoid the accident, which fact was found by the jury in his favor. Every issue of fact including the alleged fact of appellee's contributory negligence was submitted to the jury for their finding. The case of San Antonio & A. P. Ry. Co. v. Singletary (Tex. Civ. App.) 251 S. W. 325, cited by appellant, has some issues similar to this case, but is easily distinguished from it. In that case there is nothing to show that plaintiff exercised any ordinary case, or that he did not hear the whistle. There was a sign in front of him at the turn of the road. It was not shown that the collision took place at night and that no whistle was blown to give notice of the approaching train.

Where the defendant's pleading does not raise the particular issue of negligence on the part of the plaintiff found by the jury, the defendant is not entitled to a judgment even though there is evidence in the record without objection which would support the finding. Defendant requested and the court charged the jury: "Did the plaintiff, at the time of first discovering defendant's train, just prior to the accident, exercise such care as an ordinarily prudent person would then have exercised to avoid said accident? Answer 'yes' or 'no.' " And the jury answered, "No." Allen v. Allen, 101 Tex. 362, 107 S. W. 528; Austin Bros. v. Patton (Tex. Com. App.) 294 S. W. 537; Automobile Finance Co. v. Bryan (Tex. Civ. App.) 3 S.W.(2d) 835; Baptist Missionary and Educational Convention v. Knox, (Tex. Civ. App.) 23 S.W.(2d) 781; Bray v. Bray (Tex. Civ. App.) 1 S.W.(2d) 525; Dalton v. Davis (Tex. Com. App.) 1 S.W.(2d) 571; Fields v. Florence (Tex. Civ. App.) 123 S. W. 187; Ginners' Mutual Underwriters v. Wiley & House (Tex. Civ. App.) 147 S. W. 629; Globe Laundry v. McLean (Tex. Civ. App.) 19 S.W. (2d) 94; Maddox v. Summerlin, 92 Tex. 483, 49 S. W. 1033, 50 S. W. 567; McCaskey v. McCall (Tex. Civ. App.) 226 S. W. 432; Osage Oil & Gas Co. v. Caulk (Tex. Civ. App.) 243 S. W. 551; Schaff v. Perdue (Tex. Civ. App.) 254 S. W. 151; Seaton v. Majors, (Tex. Civ. App.) 182 S. W. 712; Security Banking & Inv. Co. v. Flanagan (Tex. Civ. App.) 241 S. W. 702; St. L., B. & M. Ry. Co. v. McClellan (Tex. Civ. App.) 173 S. W. 258; Texas & N. O. Ry. Co. v. Richardson (Tex. Civ. App.) 143 S. W. 722; Western Union v. Stracner (Tex. Civ. App.) 152 S. W. 845.

The finding of the jury on the question settles the matter, and the objection must be overruled. Even if the jury finding on the special issue involved was a finding that appellee was guilty of contributory negligence, as in the case cited by appellant, there being

no pleading on which to support such a finding, the trial court properly disregarded it and rendered judgment for appellee. The jury having found plaintiff guilty of negligence but expressly found that such negligence was not the proximate cause of the injury. There being ample evidence in the record to support such finding, the defendant is not relieved of liability for its own acts of negligence, which were the proximate cause of the injury.

At the request of appellant the court submitted the following special issues, which, with their answers, are as follows:

"Did the plaintiff exercise such care as an ordinarily prudent person would have exercised under like or similar circumstances to ascertain before approaching defendant's railroad crossing whether or not defendant's train was approaching and about to cross said crossing? Answer 'yes' or 'no.' Answer: 'Yes.'

"Did the plaintiff, at the time of first discovering defendant's train, just prior to the accident, exercise such care as an ordinarily prudent person would then have exercised to avoid said accident? Answer 'yes' or 'no.' Answer: 'No.'

"If you have answered the above interrogatory in the negative, then you will answer the following question:

"Was the plaintiff's failure to exercise such ordinary care to avoid said accident the proximate cause of the injury? Answer 'yes' or 'no.' Answer: 'No.' "

The jury had previously found the appellant guilty of negligence in three particulars, two of which they found to be proximate causes of appellee's injury.

While the jury found that appellee at the time of discovering the appellant's train, just prior to the accident, did not exercise such care as an ordinarily prudent person would have then exercised to avoid a collision, they did find that appellee's failure to exercise such ordinary care was not the proximate cause of the injury. These two issues were submitted at the express request of appellant, and it should not be heard to complain that there is a conflict in them or that the jury's finding on the issue of proximate cause is not controlling. If the accident would have happened even though appellee had used the same degree of care that an ordinary prudent person would have used, his negligence cannot be said to have been a proximate cause of his injury. The true test was whether or not, after appellee discovered his peril, his failure to use ordinary care was the proximate cause of the injury. The jury determined that it was not. The trial court submitted a proper and approved definition of proximate cause to the jury.

The jury found that the crossing in question was "unusually dangerous," and that appellant was negligent in failing to place a flagman at said crossing; and further that such negligence was the proximate cause of the injury. In regard to the exception to the pleading, such as to being a conclusion of the pleader, when it details facts and makes legitimate charges of negligence based upon the facts so alleged, it cannot be sustained. Under the facts outlined in respect to the dangerous crossing, there was evidence sufficient to sustain the same alleged and proven.

Much testimony was introduced and much said, pro and con, on the question of the misconduct of the jury; but we fail to see how it has influenced a verdict improperly. Appellant attempted to show that one of the jurors had made statements concerning matters not in evidence, and that other jurors had considered them. Juror Stryker said that the juror Casterline had made certain statements which he categorically denied on oath. Every other juror, except the juror Stryker, testified that he did not hear any such statement made. The trial court heard and considered the testimony, determined that the misconduct alleged did not occur, and denied the motion for new trial. It is not a healthful law to permit one juror to charge improper conduct, which is denied by the others. It makes a verdict depend upon a very uncertain basis. But the protection from such assaults is given in the fact that such questions are finally disposed of by the trial court, who is supposed to know the jurors and to pass upon their truth and veracity, by the manner in which they testify, etc. Such finding by the trial court will not be disturbed unless the action of the court itself was arbitrary and wrong. Houston & T. C. Ry. Co. v. Gray, 105 Tex. 42, 143 S. W. 606; Moore v. Ivey (Tex. Com. App.) 277 S. W. 106; Bradley v. T. & P. Ry. Co. (Tex. Com. App.) 1 S.W.(2d) 861.

The following special issue presented by appellant to the court, and embodied in the same instrument with the other special issues, with no separate request for its submission, was properly refused by the court:

"Could plaintiff, by the exercise of such ordinary care as an ordinarily prudent person would have exercised under like or similar circumstances, have ascertained, either by looking or listening, his danger in attempting to cross defendant's railroad track at the time of the accident, in time to have avoided said accident? Answer 'yes' or 'no.' " Galveston, H. & S. A. Ry. Co. v. Blumberg (Tex. Civ. App.) 227 S. W. 734; Hall v. Johnson (Tex. Civ. App.) 225 S. W. 1110; Southern Traction Co. v. Dillon (Tex. Civ. App.) 199 S. W. 698; Texas & N. O. Ry. Co. v. Houston Undertaking Co. (Tex. Civ. App.) 218 S. W. 84; Texas & P. Ry. Co. v. Perkins (Tex. Civ. App.) 284 S. W. 683; Texas & P. Ry. Co. v. Ray (Tex. Civ. App.) 287 S. W. 91; Vernon's Ann. Statutes, art. 2190, note 31, pp. 716–721.

No issue of negligence per se was submitted to the jury. No issue concerning the failure of the appellant to place a proper sign post at its crossing was submitted to the jury. The jury found that the failure of appellant to ring the bell and blow the whistle was not a proximate cause of the injury. The verdict was based upon express negligence.

We have carefully considered appellant's brief and the propositions based upon its assignments, and find no error presented that should cause a reversal. This seems to be a simple fact case in which all the findings upon proper issues were found in favor of appellee.

The judgment is affirmed.

FLY, C. J., and SMITH, J., concur in the result.